# IN THE COURT OF APPEALS OF IOWA

No. 16-1121
Filed June 7, 2017

**IN THE INTEREST OF I.F., J.K., L.K., and T.K.,**
**Minor Children,**

**J.F., Mother,**
        Appellant.
_____

        Appeal from the Iowa District Court for Clinton County, Philip J. Tabor,

District Associate Judge.


        The mother appeals the juvenile court's order terminating parental rights

to her four children, I.F., J.K., L.K., and T.K.  **AFFIRMED.**


        Judd J. Parker of Parker Law Office, Clinton, for appellant mother.

        Thomas J. Miller, Attorney General, and Kathrine S. Miller-Todd, Assistant

Attorney General, for appellee State.

        Scott J. Nelson, Dubuque, guardian ad litem for minor children.


        Considered by Danilson, C.J., and Potterfield and Bower, JJ.  Tabor, J.,

takes no part.

**POTTERFIELD, Judge.**

The mother appeals from the juvenile court's order terminating her parental rights under Iowa Code section 232.116(1)(f) and (h) (2016). She argues the State failed to satisfy the statutory grounds for termination, reasonable efforts were not made to reunite the children with the mother, and termination is not in the best interests of the children. Because the mother refuses to acknowledge the abuse that led to the children's issues, the home is unsafe for the children's return, and the children are improving under alternative care, we affirm.

**I. Background Facts and Proceedings.**

J.K., L.K., and T.K. are siblings from the mother's previous marriage, which dissolved in 2008.[1] J.K was born in 2006, L.K. in 2005, and T.K. in 2004. In 2009, the mother married Michael, the children's current stepfather. Michael is also I.F.'s legal father.[2] I.F. was born in 2013. Michael has four children from another relationship who have lived in the household at various times.

Social service departments for Iowa, Indiana, and Illinois have been involved with this family for quite some time. The first instance of involvement with social services arose in 2003 when Michael was involved with the Illinois Department of Children and Family Services (DCFS) for domestic violence issues between him and his then-wife. DCFS placed Michael's children in foster care for approximately six months. In 2004, Michael had another child, and DCFS issued a risk-of-harm notice for the child based on the family's history with

---

[1] The father did not participate in the termination proceedings, and his parental rights are not at issue in this appeal.
[2] I.F.'s father's parental rights are not at issue in this appeal.

services. In 2005, the Iowa Department of Human Services (DHS) and the Illinois DCFS raised concerns about domestic violence between Michael and his former wife. Both parties denied the allegations. In 2008, Michael divorced his wife, and in 2009, he married the mother.

In September 2010, the parties moved to Indiana. The Indiana Department of Child Services (DCS) issued a founded abuse report against the mother and Michael for improper supervision. Another founded abuse report was issued a month later against the mother and Michael for improper supervision. The reports indicated the children were observed numerous times at night, unsupervised, playing on a road. DCS removed the children for lack of supervision, but they were eventually returned. In 2011, Michael filed for divorce from the mother, but he later dismissed the action. The family moved back to Illinois.

Shortly after the move, Illinois DCFS issued a report of abuse for Michael's child, S.F.,[3] in October 2012. In January 2013, I.F. was born and shortly thereafter, the family moved to Iowa. In September 2013, DHS issued a founded physical abuse report against the mother and Michael for hitting T.K. and L.K. with a paddle, which resulted in bruises. Two months later, DHS issued an unfounded report after allegations that one of Michael's children punched T.K. in the face. After an uncontested dispositional hearing, T.K. was placed in the mother's care, subject to DHS supervision, and the court adopted the DHS case plan, which required the mother to remain in Iowa.

---

[3] S.F. is not a subject of this termination action.

In February 2014, DHS issued a founded report of sexual abuse based on two of Michael's children sexually abusing T.K. and L.K.  A week later, DHS issued a not-confirmed report of physical abuse alleging Michael struck J.K. in the back with a paddle.  Michael's children who were accused of sexual abuse were moved to their mother's house.  In May, the department issued a founded report against the mother and Michael for denial of critical care for failing to provide proper supervision when Michael's ten-year-old child was left supervising the other children.  In August, DHS issued a founded abuse report against the mother for hitting T.K. with a belt and clothing hangers.  In September, DHS issued a founded child abuse report against Michael for sexually abusing T.K. over several years.  Michael was required to leave the family home and not allowed to contact the children under the case plan.

In September, T.K. was voluntarily placed in foster care by the mother after T.K.'s psychiatric hospitalization due to T.K.'s physically violent behavior in the family home.  Reports indicate T.K.'s outburst was behavioral rather than mental, and it was suggested her home environment was contributing to the problem.  T.K. had another outburst at her foster home, which led the juvenile court to change her foster placement to another family.  Her outbursts, again, were attributed to behavioral issues.  In November, L.K. was voluntarily placed in foster care after a behavioral outburst that required emergency treatment.

The mother was offered a variety of services throughout the underlying action, including counseling (individual and couple's); psychological evaluations; behavioral health intervention services (BHIS); parenting classes; visitation; and family safety, risk, and permanency (FSRP) services.  Regarding the mother's

effort to participate in services, the court stated, "It is clear that throughout the life of this case the services that have been offered have either been refused or manipulated or paid lip service to without any internalization by the mother."

In December, the court placed J.K. in the custody of DHS for placement in family foster care. In its order, the court stated:

> The testimony of the mother can best be described as a story of denial, blame, ignorance, and refusal to take responsibility for the issues in this family. Even with the involvement of Juvenile Court and services being provided in the family home, these children still are not having their medical needs met, their therapeutic needs met, their eye care needs met, and their safety needs met and cannot be safely maintained in the family home.

The court also cited the mother's refusal to participate in case-plan requirements along with her inability to understand the dysfunction in her home as reasons for removal. In June 2015, after a contested removal hearing, the court placed I.F. in the temporary custody of DHS. Before the hearing, I.F. was in the mother's custody under DHS supervision. The State requested removal after DHS learned the mother allowed contact between I.F. and Michael, contrary to the safety plan.

Guardian ad litem (GAL) reports illustrate behavioral harm to the children due to the mother's dysfunctional household. J.K. has been diagnosed with reactive attachment disorder and cognitive disorders. T.K. and L.K. both suffered from behavioral issues, which required hospitalization, removal, and BHIS. Reports indicate the children's behavioral issues have "improved dramatically since suspension of visitation" with the mother and Michael, and "behavioral issues always re-manifested following visitation."

In May 2016, a two-day termination trial took place in Clinton County.[4] The mother testified about the alleged abuse. She denied Michael sexually abused any of her children. DHS workers testified the child's reports of sexual abuse were believable and consistent. In its order, the court discussed the mother's testimony and credibility:

> [I]n every hearing the mother has testified, everything that she has said at that hearing is different when she testifies at the next hearing: a different house; a different job; a different reason for this; a different reason for that. *It is clear . . . that the mother's testimony is not credible.* The mother does not take any responsibility for the dysfunction of her family, nor does she take any responsibility for the fact that the original adjudicatory harm in this matter was sexual abuse by members of the household vis-à-vis other members of the household when she was the supervising adult.

(Emphasis added.) The mother also testified about her living arrangement in a four-bedroom apartment.[5] The mother claimed Michael refurbished two rooms in an extended-stay motel, and the conditions were safe for the children's return. She also submitted pictures of the residence.

DHS and Lutheran Services of Iowa reports, however, conflict with the mother's testimony and the photographic evidence. Two witnesses testified on behalf of the State that they toured the residence. Both witnesses claimed the apartment was a small two-bedroom residence, and neither witness could recall a green-painted bedroom that was depicted in one of the mother's photographs. DHS workers also testified that the grounds were unsafe for children. The motel

---

[4] The juvenile actions that were initiated in Jones County were later transferred to Clinton County.

[5] At one point during her testimony, the mother testified the apartment contained five bedrooms. It is not clear from mother's testimony whether she is living in a two, three, four, or five-bedroom apartment.

is known for drug use and theft. The mother was even assaulted during an altercation with a belligerent guest, which required hospitalization.

In June the juvenile court entered an order terminating the mother's parental rights to I.F., J.K., L.K., and T.K. The mother appealed.

Our supreme court initially remanded the case upon the court's own motion to clarify "what records were judicially noticed by the juvenile court in reaching its decision on the petition to terminate," as the juvenile records were from different counties. The juvenile court clarified the juvenile case numbers and stated all exhibits and testimony from the Clinton and Jackson county files for A.F., T.F., D.F., T.K., L.K., J.K., G.G., S.F., and I.F.[6] were considered in the termination hearing. The court also noted that any Jones County cases regarding the children were reviewed during the termination proceedings, and the files are part of the record. Any transcripts of hearings in the Jackson County Juvenile Court are not part of the record on appeal, although they were reviewed by the juvenile court.

## II. Standard of Review.

We conduct a de novo review of proceedings terminating parental rights. *In re A.M.*, 843 N.W.2d 100, 110 (Iowa 2014). An order terminating parental rights will be upheld if there is clear and convincing evidence of grounds for termination under Iowa Code section 232.116. *In re D.W.*, 791 N.W.2d 703, 706 (Iowa 2010). Evidence is "clear and convincing" when there are no serious or substantial doubts as to the correctness of conclusions drawn from it. *Id.* Although we are not bound by the factual determinations of the juvenile court, we

---

[6] A.F., T.F., D.F., G.G., and S.F. are not subjects of this termination action.

do give weight to them, particularly regarding the credibility of witnesses. *Id.* The primary consideration of our review is the best interests of the child. *In re J.E.*, 723 N.W.2d 793, 798 (Iowa 2006).

**III. Discussion.**

On appeal, the mother argues the statutory grounds were not satisfied, reasonable efforts were not made to reunite the children with the mother, and termination is not in the best interests of the children.

We utilize a three-step analysis when evaluating whether the termination of parental rights is appropriate under Iowa Code chapter 232. *See In re P.L.*, 778 N.W.2d 33, 40 (Iowa 2010). First, the court must determine whether the grounds for termination under section 232.116(1) were established. *Id.* Second, if the State established grounds for termination under the statute, the court must apply the framework set out in section 232.116(2) to decide if proceeding with termination is in the best interests of the child. *Id.* Third, if the statutory best-interests framework supports termination of parental rights, the court must consider if any statutory factors set forth in section 232.116(3) should serve to preclude termination. *Id.*

Under the first step, the State must establish the statutory grounds for termination under chapter 232. The district court held termination is appropriate under section 232.116(1)(f)[7] and (h).[8] The remaining issue on appeal under the

---

[7] Under subsection (f), termination is appropriate if:

(1) The child is four years of age or older; (2) The child has been adjudicated a child in need of assistance pursuant to section 232.96; (3) The child has been removed from the physical custody of the child's parents for at least twelve of the last eighteen months, or for the last twelve consecutive months and any trial period at home has been less than thirty days; and (4) There is clear and convincing evidence that at

statutory grounds is whether the State presented clear and convincing evidence the children could not be returned to the mother at the time of the termination hearing. The mother claims the home was appropriate for the children to return and any adjudicatory harm threatening the children was resolved at the time of termination.

The record, however, suggests the mother's living arrangement is unsuitable. Michael is living in the apartment, and while the mother continues to deny he sexually abused any of her children, a founded abuse report suggests otherwise. DHS workers testified his presence presents a risk of harm to the children. DHS noted T.K.'s consistent, believable story that Michael sexually abused her. DHS workers also discovered D.F.—one of Michael's children who sexually abused T.K. and L.K.—staying at the apartment, which was undisclosed to DHS by the mother. It is unclear how often Michael's children stay at the apartment. We agree with the district court that the children are unable to be returned to the custody of the mother at the time of the termination hearing.

The mother next claims the State did not make reasonable efforts for reunification because the State did not schedule therapy sessions, and the

---

the present time the child cannot be returned to the custody of the child's parents as provided in section 232.102.
Iowa Code § 232.116(1)(f).

[8] Under subsection(h) termination is appropriate if:

(1) The child is three years of age or younger; (2) The child has been adjudicated a child in need of assistance pursuant to section 232.96; (3) The child has been removed from the physical custody of the child's parents for at least six months of the last twelve months, or for the last six consecutive months and any trial period at home has been less than thirty days; (4) There is clear and convincing evidence that the child cannot be returned to the custody of the child's parents as provided in section 232.102 at the present time.

*Id.* § 232.116(1)(h).

department erroneously determined case-plan requirements were incomplete. The State has the burden to show reasonable efforts were made. *In re C.B.*, 611 N.W.2d 489, 493 (Iowa 2000). The record shows the State provided a variety of services to help reunite the mother with the children, including counseling (individual and couples'), psychological evaluations, BHIS, parenting classes, visitation, and FSRP services. The record indicates the mother has not consistently participated in services for herself or her children. Reports also suggest the mother has not always cooperated with the department. To the extent the mother raises concerns over the State's services for the first time at the termination hearing or on appeal, the mother is required to challenge services when the case plan is entered. *See In re H.L.B.R.*, 567 N.W.2d 675, 679 (Iowa Ct. App. 1997); *In re L.M.W.*, 518 N.W.2d 804, 807 (Iowa Ct. App. 1994). We agree with the district court that the State met its burden to show reasonable efforts were provided to the mother.

Next, we determine whether termination is in the best interests of the children. Even when the statutory grounds for termination are satisfied, the juvenile court must give "primary consideration to the child's safety, to the best placement for furthering the long-term nurturing and growth of the child, and to the physical, mental, and emotional condition and needs of the child." Iowa Code § 232.116(2). The mother claims the children did not receive better care when removed. She also claims the sibling bond should preclude termination. The mother's claims miss the point. The children's interests are best served by removing them from a toxic environment of abuse and neglect, and the mother's failure to recognize the abuse further endangers the children. *See In re C.H.*,

652 N.W.2d 144, 150 (Iowa 2002) ("A parent's failure to address his or her role in the abuse may hurt the parents' chances of regaining custody and care of their children."); *In re T.T.*, 541 N.W.2d 552, 557 (Iowa Ct. App. 1995) ("[W]hen a parent is incapable of changing to allow the child to return home, termination is necessary."). The mother has yet to demonstrate an ability to understand the trauma she and her husband inflict on the children, nor does she acknowledge the steps required to heal the trauma. She denies Michael sexually abused L.K. despite evidence to the contrary. She also denies or minimizes the abuse present in the household. Children are not required to endure emotional and physical trauma while they wait years for their parents to acknowledge it. *See In re A.B.*, 815 N.W.2d 764, 778 (Iowa 2012) ("It is simply not in the best interests of children to continue to keep them in temporary foster homes while the natural parents get their lives together."); *In re A.C.*, 415 N.W.2d 609, 613 (Iowa 1987) ("The crucial days of childhood cannot be suspended while parents experiment with ways to face up to their own problems."). Terminating the mother's parental rights is in the children's best interests.

We also note testimony shows the children are improving in their respective care arrangements. Sheryl Murphy, DHS social worker, testified about the children's progress since removal. She stated while T.K. had some issues at school, her behavioral issues have been eliminated, as evidenced by her BHIS assessment. The GAL report states, "[T]he children seem to thrive in a care situation involving rules, routine, and expectations. They are not getting structure with [Michael] and [the mother]." The GAL opined the lack of structure

under Michael and the mother "has led to all of the behavioral problems exhibited by the children."

Because the mother refuses to acknowledge the abuse that led to the children's issues, the home is unsafe for the children's return, and the children are improving under alternative care, it is in the children's best interests to terminate the mother's parental rights.  We affirm.

**AFFIRMED.**