In the Interest of L.M.W., a Minor Child.

M.W.G., Mother, Appellant.

P.G., Father, Appellant.

No. 93–1291.

Court of Appeals of Iowa.

April 26, 1994.

David L. Phillips of Smith, Reis & Phillips, West Des Moines, for appellant mother.

June Lorraine Hyatt, Des Moines, for appellant father.

Bonnie J. Campbell, Atty. Gen., John M. Parmeter, Judy Sheirbon, Asst. Attys. Gen., and Ray Blase, Asst. County Atty., for appellee State.

Cory McClure, Ankeny, guardian ad litem, for the child.

Heard by DONIELSON, P.J., SACKETT, J., and PETERSON, Senior Judge.*

SACKETT, Judge.

Margaret and Phillip, the mother and father of Linda, born June 29, 1992, appeal an order entered August 2, 1993, terminating their parental rights to their daughter. They contend there was not clear and convincing evidence supporting the termination and the requirements necessary for them to gain custody of their child were not reasonable. We affirm.

■ Our review of a termination proceeding is de novo. *In re W.G.*, 349 N.W.2d 487, 491 (Iowa 1984) *cert. denied, sub nom. J.G. v. Tauke*, 469 U.S. 1222, 105 S.Ct. 1212, 84 L.Ed.2d 353 (1985). We give weight to the findings of fact of the juvenile court, especially when considering the credibility of witnesses, but we are not bound by those determinations. *Id.* at 491–92.

Linda was born at Broadlawns Medical Center where Margaret was a patient under an involuntary commitment order. Margaret was committed because she allegedly was not obtaining the required prenatal care and planned to deliver the child at home so the Department of Human Services would not remove the child from her care.

True to Margaret's prediction, Linda was taken by the Department of Human Services immediately after she was born and placed in foster care. Margaret was released from Broadlawns on July 21, 1992, never having cared for her child. Margaret and Phillip were not allowed any contact with the child until October 15, 1992, when an order established their right to very limited supervised visitation.

Margaret had given birth to three older children. Phillip was the father of two of these children. The parental rights of the birth parents of these three children were terminated by the juvenile court on June 15, 1992. The termination of the three children's parental rights was affirmed by this court on July 29, 1993.

* Senior judge from the 1st Judicial District serving on this court by order of the Supreme Court.

The State relied on Iowa Code section 232.116(1) in terminating parental rights. This section provides:

1. Except as provided in subsection 3, the court may order the termination of both the parental rights with respect to a child and the relationship between the parent and the child on any of the following grounds:

. . . . .

g. The court finds that all of the following have occurred:

(1) The child is three years of age or younger.

(2) The child has been adjudicated a child in need of assistance pursuant to section 232.96.

(3) The custody of the child has been transferred from the child's parents for placement pursuant to section 232.102 for at least six months of the last twelve months, or for the last six consecutive months and any trial period at home has been less than thirty days.

(4) There is clear and convincing evidence that the child cannot be returned to the custody of the child's parents as provided in section 232.102 at the present time.

Iowa Code § 232.116(1)(g) (1991).

Margaret and Phillip contend the State has failed to prove by clear and convincing evidence the child cannot be returned to their custody. Phillip contends no reasonable plan was ever presented for the child's return.

Margaret argues that at the termination hearing the evidence focused on her ability to provide a safe and secure home for her three older children but there was little evidence concerning her ability to care for Linda other than observations made during supervised visits.

■ Margaret also contends the finding she suffered from mental illness was flawed because the testimony concerning her alleged mental illness was not credible.

Margaret Shin, M.D., who is licensed in Iowa and has practiced psychiatry for ten years, was called as a witness by the State. Margaret advances the quality of Shin's responses are impaired by Shin's lack of command of the English language. Margaret also points to confusion in the record about Shin's diagnosis, particularly Shin's recording that Margaret was schizophrenic paranoid and then scratching it out and replacing the diagnosis as bipolar disorder. Margaret points out Shin testified that a person with Margaret's type of mental illness could not hold down full-time employment without medication and then testified she was not surprised Margaret held a full-time job without medication. Margaret argues we should consider these factors and give little weight to Shin's testimony.

We agree that Shin's testimony is confusing. Shin did a poor job of explaining the change of records, and we, too, find her lack of command of the English language makes it difficult to follow her thought patterns.

However, a review of the entire record indicates Margaret's mental illness is well documented as is its adverse effect on her ability to care for children. The effect medication has on her illness is not clear. Margaret resisted taking medication during her pregnancy because she was concerned it would be harmful to her fetus and contends the prescribed medication makes her goofy and sleepy. Margaret contends she can perform at her job only when she is not medicated.

■ Phillip advances it was the Department's intent to terminate parental rights from the day Linda was born. He points out there were no visits until October and then the visits were at the agency's office, supervised, and for an hour. Phillip argues no efforts were made to keep the family unit intact. He also argues testimony about how they as parents reacted in these short supervised visits should be given little consideration because the setting and circumstances were not normal.

We agree with Phillip that supervised visits with a very young child may not provide a fair assessment of a parent's ability. We also agree the approach this case took would indicate a general attitude by the Department from the start that Margaret's parental rights should be terminated.

■ There is a requirement that reasonable services be offered to preserve the family unit. *See In re A.L.*, 492 N.W.2d 198, 201 (Iowa App.1992); *In re B.L.*, 491 N.W.2d 789, 791–93 (Iowa App.1992). *In re A.W.*, 464 N.W.2d 475, 478 (Iowa App.1990); *In re M.H.*, 444 N.W.2d 110, 113 (Iowa App.1989). The October 15, 1992, order makes a general finding reasonable efforts have been made to eliminate need for removal. The order does not elaborate on what efforts were made. A court is required to find reasonable efforts have been made to eliminate the need for removal before a removal is ordered. *See* Iowa Code § 232.102(4); *see also* 42 U.S.C. § 671(a)(15). There is no evidence the parents, at the time of the October 15 hearing, challenged the fact reasonable efforts had not been utilized or made any request for specific services to allow the family to remain together. While the state had the obligation to make the efforts[1], the parents have a responsibility to demand services prior to the termination hearing. *In re C.D.*, 508 N.W.2d 97, 101 (Iowa App.1993). Challenges to the plan for reunification should have come when the plan was entered. There is no evidence the parents attempted to raise these issues. We also note the termination is because of mental illness. We recognize a parent suffering from mental illness suffers a disability and may need special accommodations. This issue, too, should be raised at the removal or review hearing. It is too late to challenge the service plan at the termination hearing. *See id.*

Margaret also contends the case plan implemented for return of her daughter set unfair requirements. She said counseling was a part of the plan, and the parents were offered marital counseling, but it just confused their relationship because they were told they would have to separate to get their child back.

■ The juvenile court found both parents suffered long-standing mental illness. It found Margaret at the hearing denied she suffered a mental illness and stated she does not need medication. The court found Phillip has a long-standing mental illness and currently takes medication for the illness. It also found Phillip is not interested in providing full-time care for the child.

The parents in this case raise no constitutional challenges. The Iowa Supreme Court has said a parent's mental disability is a proper factor to consider in determining whether a child is neglected and his or her welfare requires termination. *In re J.W.D.*, 456 N.W.2d 214, 218 (Iowa 1990); *In re A.M.S.*, 419 N.W.2d 723, 733–34 (Iowa 1988). We also look to cases where this court has found termination of parental rights of the mentally handicapped should not occur and these decisions have been vacated. *In re J.W.D.*, 456 N.W.2d at 219; *In re A.M.S.*, 419 N.W.2d at 734.

Following the precedent set by our supreme court, we affirm the termination.

**AFFIRMED.**

---

1. The core of the reasonable efforts mandate is that the child welfare agency must make reasonable efforts to prevent placement or to reunify families *in each case*. This is both a required element of each state's Title IV–E state plan and a condition of federal funding for individual foster care placements. 42 U.S.C. §§ 671(a)(15), 672(a)(2). *See* Attorneys' and Judges' Responsibilities. Because federal law contains no elaborate definition of "reasonable efforts," the states have considerable discretion in meeting the requirement in individual cases. Federal law does make clear, however, that the case plan for each child is an integral element of the reasonable efforts implementation process. The federal regulations implementing the reasonable efforts requirement mandate that each child's case plan must contain a description of what services were offered and provided to prevent removal of the child from the home and to reunify the family. 45 C.F.R. § 1356.21(d)(4) (1990). In addition, federal law clearly requires that states provide a system of fair hearings to enable families whose request for services have been denied or not acted upon to seek review of the denial. 42 U.S.C. § 671(a)(12). Edna McConnell Clark Found., *Making Reasonable Efforts: Steps For Keeping Families Together* 47, 71.