## IN THE COURT OF APPEALS OF IOWA

No. 13-1841
Filed May 29, 2014

**IN THE INTEREST OF J.S., E.S., P.S., AND J.S.,**
**Minor Children,**

**M.S., Father,**
**Appellant,**

**S.B., Mother,**
**Appellant.**

_____

Appeal from the Iowa District Court for Audubon County, Susan L. Christensen, District Associate Judge.

A mother appeals the order terminating her parental rights.  **AFFIRMED.**

Jennifer Plumb of Cambridge Law Firm, P.L.C., Atlantic, for appellant father.

David L. Wiederstein of Otto,. Lorence & Wiederstein, P.L.L.C., Atlantic, for appellant mother.

Thomas J. Miller, Attorney General, Janet L. Hoffman, Assistant Attorney General, and Francine Anderson, County Attorney, for appellee State.

Karen Mailander, Anita, attorney and guardian ad litem for minor children.

Considered by Vogel, P.J., and Doyle and Mullins, JJ.

**DOYLE, J.**

A mother appeals the order terminating her parental rights to her four children: two-year-old J.S., three-year-old E.S., four-year-old P.S., and six-year-old J.S.[1] We affirm.

## I.    *Background Facts and Proceedings*

This family came to the attention of the Iowa Department of Human Services (DHS) in November 2011 following concerns about deplorable and unsafe home conditions. A child abuse assessment resulted in a founded report of denial of critical care against the mother and father. Concerns about the parents' failure to provide adequate health care for one of the children, P.S., resulted in a second founded report of denial of critical care against the parents.

The children were adjudicated in need of assistance in February 2012. The children remained in the family home and services were initiated to eliminate the concerns regarding the condition of the home. Unfortunately, the parents were unable to maintain a clean, safe home environment for the children. The children were filthy and had no specific routines. They did not have consistent mealtimes and were allowed to stay up until 1:00 a.m. on a regular basis. The older three children did not wear diapers and were allowed to urinate and defecate throughout the home. Animal feces, discarded food, debris, and small choking hazards cluttered the floor.

The children were removed from the parents' care in June 2012. In its order removing the children following a review hearing, the juvenile court noted

---

[1] The father of the children also appealed, but the Iowa Supreme Court dismissed his appeal as untimely on May 12, 2014.

the lack of progress and motivation by the parents and found, "Enough is enough. [The children are] too young to self-protect [and to] allow them to remain in their parents' care is contrary to their welfare and poses an immediate and imminent threat to their lives and safety." The children have not returned to the parents' care since their removal.

The mother and father were unemployed and unable to maintain employment. The mother received monthly social security disability payments but struggled to meet basic needs. She did not have a driver's license because she had a fear of driving. The father married another woman who was pregnant with his child, moved to Oklahoma, and ceased participation in reunification services. Meanwhile, the mother began living with her seventeen-year-old boyfriend and became pregnant with his child.

To her credit, the mother was able to improve the conditions of her home after the children were removed from her care. Unfortunately, the mother remained unable to implement appropriate parenting skills to keep her young children safe. The children's behaviors were reported to be "extremely difficult" and the mother was unable to parent the children without significant assistance and constant supervision.[2]

The mother's supervised visits took place once per week for two hours. During the visits, the mother struggled to maintain control over the children and became overwhelmed. Care providers played an active role in keeping the children safe during visits. The mother also had two four-hour supervised visits

---

[2] Although the children have developed challenging behaviors, case providers believe they are adoptable.

and two eight-hour supervised visits. Although the mother attempted to use the parenting skills she was learning through reunification services, she became frustrated and relied on care providers to help care for the children. Care providers opined the mother could not have the children overnight without posing a risk to the children's well-being. The mother did not request extended visits at her home, and stated she felt "safer" when visits took place at the DHS office.

The State filed a petition to terminate parental rights in August 2013. The termination hearing was held in August 2013. By that time, the mother had given birth to her fifth child.[3] The mother acknowledged she struggled caring for her older four children by herself but expressed it would be better if she had someone with her. The guardian ad litem's statement to the court recommended termination of parental rights and placement of the children with adoptive families, noting the mother "has tried very hard to learn to parent better, and has been completely compliant with all services [but] she is unable to care for all four at once."

Following the termination hearing, the juvenile court entered its order terminating the mother's parental rights pursuant to Iowa Code sections 232.116(1)(f) and (h) (2013). The mother appeals.

## II.    *Scope and Standard of Review*

We review proceedings to terminate parental rights de novo. *In re A.B.*, 815 N.W.2d 764, 773 (Iowa 2012). We give weight to the juvenile court's factual findings, especially when considering the credibility of witnesses, but we are not bound by them. *Id.* We will uphold an order terminating parental rights if there is

---

[3] That child is not subject to these proceedings.

clear and convincing evidence of grounds for termination under Iowa Code section 232.116. *In re D.W.*, 791 N.W.2d 703, 706 (Iowa 2010). Evidence is clear and convincing when there are no serious or substantial doubts as to the correctness or conclusions of law drawn from the evidence. *Id.*

### III. Discussion

### A. Grounds for Termination

We must first determine whether a ground for termination under section 232.116(1) is established. *In re P.L.*, 778 N.W.2d 33, 39 (Iowa 2010). Here, the mother does not dispute the statutory grounds under sections 232.116(1)(f) and (h) have been proved by clear and convincing evidence.

Rather, the mother claims she did "not have enough opportunity to have visits with her children due to restrictions imposed on her by DHS,"[4] including the chance to "parent her children in the new and improved home environment that she had established" or "test the visitation with one or two of her four children at a time rather than all four at the same time." We interpret this contention as a claim the State did not engage in reasonable efforts to reunite her with the children.

Reasonable services must be provided to attempt to reunite a family before the State can terminate parental rights.[5] *See In re L.M.W.*, 518 N.W.2d 804, 807 (Iowa Ct. App. 1994). Although the State has the obligation to make

---

[4] We disregard the inconsistency with this claim and the mother's further claim that she "had regular visitation and contact with the children."

[5] Iowa Code section 232.102(5)(b) requires the State to make reasonable efforts to preserve the family before removing a child from the home. After removal, the State must make reasonable efforts to reunify the family as quickly as possible. *See* Iowa Code § 232.102(7). In determining whether reasonable efforts have been made, the court considers "[t]he type, duration, and intensity of services or support offered or provided to the child and the child's family." *Id.* § 232.102(10)(a)(1).

reasonable efforts, it is the parent's responsibility to demand services if they are not offered prior to the termination hearing. *In re H.L.B.R.*, 567 N.W.2d 675, 679 (Iowa Ct. App. 1997).

At each stage of the proceedings, the juvenile court consistently found reasonable efforts were being made. The mother did not request any specific services prior to termination, and indeed, asked that visits take place at the DHS office rather than her home. After a careful review of the record, we find the services offered were reasonable under the facts of this case.

B. *Factors in Termination*

Even if a statutory ground for termination is met, a decision to terminate must still be in the best interests of the children after a review of section 232.116(2). *P.L.*, 778 N.W.2d at 37. In determining the best interests, this court's primary considerations are "the child's safety, the best placement for furthering the long-term nurturing and growth of the child, and the physical, mental, and emotional condition and needs of the child." *Id.*

The mother does not dispute termination is in the best interests of the children, and we agree with the juvenile court's finding that termination of the mother's parental rights is in the best interests of the children and would best provide for the children's long-term nurturing and growth. "It is well-settled law that we cannot deprive a child of permanency after the State has proved a ground for termination under section 232.116(1) by hoping someday a parent will learn to be a parent and be able to provide a stable home for the child." *Id.* at 41; *see A.B.*, 815 N.W.2d at 778 (noting the parent's past conduct is instructive in determining the parent's future behavior). Here, the mother is unable to assume

custody of the child now or at any time in the foreseeable future. Children are not equipped with pause buttons. There is no reason to delay the children the permanency they need and deserve.

*C.     Factors Against Termination*

Finally, we give consideration to whether any exception or factor in section 232.116(3) applies to make termination unnecessary. The mother claims the juvenile court erred in terminating her parental rights due to her close bond with the children. Termination is not mandatory when clear and convincing evidence is found that termination would be detrimental to the children due to the closeness of the parent-child relationship. *See* Iowa Code § 232.116(3)(c).

We have discretion, based on the unique circumstances of each case and the best interests of the children, whether to apply the factors in this section to save the parent-child relationships. *See P.L.,* 778 N.W.2d at 40. Although the mother clearly loves the children, there is no evidence the mother's relationships with the children are so close it would be detrimental to the children if termination occurred. Termination is not prevented by a consequential factor under section 232.116(3).

## IV.     Conclusion

There is clear and convincing evidence that grounds for termination exist, termination of parental rights is in the children's best interests, and no consequential factor weighing against termination requires a different conclusion. Accordingly, we affirm termination of the mother's parental rights.

**AFFIRMED.**