**IN THE COURT OF APPEALS OF IOWA**

No. 16-0655
Filed June 15, 2016

**IN THE INTEREST OF C.D.,**
**Minor Child,**

**J.P., Father,**
Appellant.
_____

Appeal from the Iowa District Court for Polk County, Colin J. Witt, District Associate Judge.

A father appeals the order terminating his parental rights. **AFFIRMED.**

Cole J. Mayer of Masterson, Bottenberg & Eichhorn, L.L.P., Waukee, for appellant father.

Thomas J. Miller, Attorney General, and Kathrine S. Miller-Todd, Assistant Attorney General, for appellee State.

Karl Wolle of the State Juvenile Public Defender's Office, Des Moines, for minor child.

Considered by Vogel, P.J., and Doyle and Bower, JJ.

**BOWER, JUDGE.**

A father appeals[1] the juvenile court order terminating his parental rights to his child, claiming the Department of Human Services (DHS) did not make reasonable efforts to facilitate reunification with the child, the court improperly denied the father's request for a six-month extension, and termination is not in the best interests of the child due to the closeness of the parent-child bond. We affirm.

We review de novo proceedings terminating parental rights. *See In re A.M.*, 843 N.W.2d 100, 110 (Iowa 2014). The three-step statutory framework governing the termination of parental rights is well-established and need not be repeated herein. *See In re P.L.*, 778 N.W.2d 33, 40 (Iowa 2010). The juvenile court issued a thorough and well-reasoned ruling terminating the father's parental rights; we adopt the findings of fact and conclusions of law as our own. The juvenile court terminated the father's parental rights pursuant to Iowa Code section 232.116(1)(h) (2015). On appeal, the father does not challenge this statutory ground.

### A. Reasonable Efforts

The father claims DHS did not make reasonable efforts, pursuant to Iowa Code section 232.102, to help him work toward reunification. Specifically, he claims DHS did not facilitate visits, did not consider other placements for C.D., and failed to provide reasonable efforts to finalize a permanency plan. The State claims the father has not preserved error on this claim because he raised this claim for the first time at the termination hearing. We will not review a

---

[1] The mother's parental rights were also terminated and she does not appeal.

reasonable-efforts claim unless it is raised prior to the termination hearing. *See In re L.M.W.*, 518 N.W.2d 804, 807 (Iowa Ct. App. 1994). Immediately prior to the termination hearing, the district court held a reasonable efforts hearing and ruled on the essence of the father's claim, therefore error has been preserved.

The focus of the requirement for reasonable efforts is on services to improve parenting. *In re C.B.*, 611 N.W.2d 489, 493 (Iowa 2000). "However, it also includes visitation designed to facilitate reunification while providing adequate protection for the child." *Id.* When a parent is incarcerated, DHS should supply services that are reasonable under the circumstances. *In re S.J.*, 620 N.W.2d 522, 525 (Iowa Ct. App. 2000).

On this issue, the court reasoned:

> If this case began in March 2015 and all the court looked at were the services to work towards reunification with the parents thereafter, then the parents would probably be correct. The issues surrounding placement in 2015 following removal from father were frustrating as an overall matter. And neither parent has had a visit with the child since [C.D.] was placed in family foster care in June 2015.
>
> However, this case began not in March 2015 but rather much earlier—two and a half years earlier—in September 2012. The entire context matters and must be considered. What happened after [C.D.] was removed from his father a year ago cannot be viewed in a vacuum. For two and a half years prior to that time, DHS provided much more than just reasonable efforts to support this family. In particular, significant services and patience and effort were expended to not ever have [C.D.] removed from his parents and biological family in total. And when considering the reasonable-efforts challenge and issue in the context of the entire case, the court has no problem in DENYING the parents' motion.
>
> Father had many opportunities, especially from March 2015 until August 2015, to engage in community based services including visits (certainly offered in March and April and May, and would have been offered had he not been in warrant). He chose not to comply/participate. From August 2015 until the end of January 2016, there was significant uncertainty as to whether he would be in the community. Visits between him and [C.D.], a 3 year

old, via the jail's video monitoring service would not have been appropriate or helpful for [C.D.] and his mental health and wellbeing on this record given all circumstances.

Upon our de novo review, we agree DHS provided reasonable efforts.

### B.      Request for Additional Time

The father claims the juvenile court improperly denied his request for additional time to work toward reunification.  Based on his past conduct, the father has not demonstrated additional time would be beneficial.  "The crucial days of childhood cannot be suspended while parents experiment with ways to face up to their own problems."  *In re A.C.*, 415 N.W.2d 609, 613 (Iowa 1987).  While the father had custody of C.D., he continued to use methamphetamine, which led to C.D.'s removal from the father's care.  C.D. tested positive for methamphetamine at the time of removal.  Further, the father's poor decision making, as evidenced by his run-ins with law enforcement, including his whereabouts being unknown for several months and his incarceration, provides additional support for the denial of his request for an extension.  We affirm the juvenile court's ruling.

### C.      Best Interests

The father claims the termination of his parental rights is not in the best interests of the child as the closeness of the parent-child bond makes termination improper.  *See* Iowa Code § 232.116(2), (3).  In determining the best interests of the child, we give primary consideration to "the child's safety, to the best placement for furthering the long-term nurturing and growth of the child[ren], and to the physical, mental, and emotional conditions and needs of the child[ren]."

*See* Iowa Code § 232.116(2); *P.L.*, 778 N.W.2d at 37. On these issues, the juvenile court reasoned:

> Turning to the best interest of the child, the overriding and governing best-interest factor at this time in this case is the need for finality. The need for permanency. The need for resolution and certainty. This little boy has endured much. Too much. Some of it the fault of the undersigned in terms of timely resolution of matters and need for court records to be developed. [C.D.] can't endure more moves, he can't endure more uncertainty. This Court and the child welfare system is not good at nor are we well equipped to stay in the lives of young children in perpetuity. There are some cases where we have to recognize that our continued systemic involvement in a child's life does more harm than good. This is one of those cases. We need to provide a resolution and bring matters to an end. This is quite simply the governing factor in this case at this time.
>
> . . . .
>
> The court has considered whether any of the five permissive exceptions to the termination statute should govern and cause the court to deny termination. The court deems that any and all attachment [C.D.] has with his . . . father should not rule the day. At this point in time, such does not and cannot outweigh the need for resolution and for what the court hopes will be permanency in a committed and loving forever home for [C.D.]

We agree with the juvenile court's reasoning and find termination is in the child's best interests. The court properly declined to find termination was improper due to the closeness of the parent/child relationship. We affirm the termination of the father's parental rights.

**AFFIRMED.**