IN THE COURT OF APPEALS OF IOWA

No. 18-0053
Filed March 7, 2018

**IN THE INTEREST OF C.B.,**
**Minor Child,**

**K.C., Mother,**
        Appellant,

**E.B., Father,**
        Appellant.

---

Appeal from the Iowa District Court for Pottawattamie County, Charles D. Fagan, District Associate Judge.

A mother and father separately appeal a juvenile court order terminating their parental rights. **AFFIRMED ON BOTH APPEALS.**

Te'ya T. O'Bannon-Martens of O'Bannon Law, P.C., Council Bluffs, for appellant mother.

Jon J. Narmi, Council Bluffs, for appellant father.

Thomas J. Miller, Attorney General, and Mary A. Triick, Assistant Attorney General, for appellee State.

Roberta J. Megel of State Public Defender Officer, Council Bluffs, guardian ad litem for minor child.

Considered by Vogel, P.J., and Potterfield and Mullins, JJ.

**MULLINS, Judge.**

A mother and father separately appeal a juvenile court order terminating their parental rights to their minor child, born in 2013.  Both parents contend the juvenile court erred in (1) finding clear and convincing evidence supported the statutory grounds for termination, (2) concluding termination is in the child's best interests, and (3) declining to apply the statutory exceptions to termination.  The father additionally argues the juvenile court abused its discretion in declining to reopen the record in the termination proceeding and the department of human services (DHS) failed to make reasonable efforts to facilitate reunification.

I.      **Background Facts and Proceedings**

This family came to the attention of DHS in August 2016 upon information that the parents were using methamphetamine (meth) while caring for the child.  It was further alleged that the parents sedated the child to make her sleep and domestic violence occurred in the child's presence.  Upon investigation, DHS learned the family was living out of a hotel and both parents were unemployed.  Both parents denied using any illegal substances, but the father tested positive for meth and the mother tested positive for amphetamine.  An order for temporary removal was entered on August 22, 2016, and the child was placed in shelter care and then relative care.  The child subsequently tested positive for both meth and amphetamine.  A child abuse assessment was founded for denial of critical care and the presence of illegal drugs in the child.  The parents were subsequently arrested and charged with child endangerment. The child was adjudicated a child in need of assistance in October.

Following substance-abuse evaluations in September, both parents received recommendations to attend intensive outpatient treatment. Both parents were admitted to treatment on October 5. The mother did not attend any individual sessions following her admission. The father attended one individual session on October 11 but tested positive for meth and amphetamine two days later, after which he did not attend any additional sessions. Without completing the program, the parents were discharged in November. The parents began another outpatient treatment program in January 2017. Their recovery therapist reported both parents were making progress in their treatment. However, between late November 2016 and early February 2017, the parents failed to provide drug screens to DHS on thirteen occasions. By February, the parents obtained a home, jobs, and transportation. By May, the parents progressed to unsupervised, overnight, and weekend visitation with the child. Up to this point in time, the parents did well with visitations.

Thereafter, however, things began to unravel. In late May the parents got in a fight and separated. The father moved in with his parents; he tested positive for meth shortly thereafter. The mother moved in with her parents, but was kicked out after a short time as a result of a physical altercation with her mother. Also in May, the parents discontinued attending their outpatient treatment program and were subsequently unsuccessfully discharged. Due to the father's relapse; the mother's inability to obtain mental-health treatment; both parents' lack of success in substance-abuse treatment; and lack of stable housing, transportation, and employment, unsupervised visitations were discontinued. The mother moved again and did not visit the child from June 2 until August 15.

The father had no visitations with the child from May 19 until September 5. The lack of contact with her parents had little, if any, effect on the child.

By August, the parents reconciled and began living together with one of their friends. In October, the State petitioned to terminate the parents' parental rights. Later that month, the parents reengaged in substance-abuse treatment. At the time of the termination hearing in early December, the father had attended two sessions and the mother three; both parents were supposed to be attending sessions on a weekly basis.

At the time of the termination hearing, the child had been in the same relative placement for more than fifteen months. Testimony reveals the child is integrated into this home and removing her from there would be emotionally harmful to her. The child refers to her relative placements as mom and dad. However, the child also refers to her biological parents as mom and dad and has a bond with them. The relatives are ready, willing, and able to adopt the child and care for her permanently.

After the termination hearing, the father filed a motion to reopen the termination record, arguing "[s]ince the [h]earing there ha[ve] been two very important incidents that have happened for the Court's knowledge." The only cited incident potentially relevant to the termination proceeding was that the parents recently moved to a new home. The juvenile court denied the motion and ultimately terminated both parents' parental rights under Iowa Code section 232.116(1)(e) and (f) (2017). As noted, both parents appeal.

## II.     Standard of Review

Appellate review of termination-of-parental-rights proceedings is de novo. *In re A.S.*, ___ N.W.2d ___, ___, 2018 WL 480373, at *4 (Iowa 2018) (quoting *In re A.M.*, 843 N.W.2d 100, 110 (Iowa 2014)). "We are not bound by the juvenile court's findings of fact, but we do give them weight, especially in assessing the credibility of witnesses." *Id.* (quoting *A.M.*, 843 N.W.2d at 110). Our primary consideration is the best interests of the child. *In re J.E.*, 723 N.W.2d 793, 798 (Iowa 2006).

## III.     Discussion

### A.     Sufficiency of the Evidence

Both parents contend the juvenile court erred in finding clear and convincing evidence supported termination of their parental rights. "On appeal, we may affirm the juvenile court's termination order on any ground that we find supported by clear and convincing evidence." *In re D.W.*, 791 N.W.2d 703, 707 (Iowa 2010). The juvenile court terminated both parents' parental rights under Iowa Code section 232.116(1)(e) and (f). As to the latter provision, the parents only appear to challenge the State's establishment of the final element, that the child could not be returned to their custody at the time of the termination hearing. *See* Iowa Code § 232.116(1)(f)(4); *see also A.M.*, 843 N.W.2d at 111 (indicating the statutory language "at the present time" refers to the termination hearing).

The parents' efforts in the first half of this case showed promise. Although they were unable to complete the primary objective of obtaining substance-abuse treatment, from the time of removal in August 2016 through May 2017, the parents were able to obtain a home, jobs, and transportation; they

progressed to unsupervised, overnight, and weekend visitation with the child; and they were relatively consistent in attending visitation. Then, the parents' relationship became unstable and everything fell apart. The father used meth again; both parents discontinued substance-abuse treatment; and both parents' housing, employment, transportation, and visits with the child became unstable. This self-destruction was followed by lengthy gaps in visitation between the parents and child, the mother approximately two-and-one-half months and the father roughly three-and-one-half months. It was not until after DHS recommended termination that the parents again exhibited an interest in the child. Still, the parents did not reengage in substance-abuse treatment until after the State petitioned for termination.

We recognize that in the few months leading up to the termination hearing the parents took some positive steps. But parents cannot wait until the eve of termination to begin to express an interest in parenting. *See In re C.B.*, 611 N.W.2d 489, 495 (Iowa 2001). They must do much more than simply go through the motions on the eve of termination in order for the child to be returned to their care. *See In re A.B.*, 815 N.W.2d 764, 778 (Iowa 2012) (noting a parent's past conduct is instructive in determining the parent's future behavior); *In re C.K.*, 558 N.W.2d 170, 172 (Iowa 1997) (stating that when considering what the future holds if a child is returned to the parent, we must look to the parent's past behavior because it may be indicative of the quality of care the parent is capable of providing in the future); *see also In re M.W.*, 876 N.W.2d 212, 224 (Iowa 2016) (indicating parents must do more than simply go through the motions and check things off their to do list). These parents' history of starting but not finishing

treatment and their inconsistent performance as parents and commitment to this child demonstrate a strong likelihood that neither of them will be capable of providing care for the child in the future.

Upon our de novo review, we find by clear and convincing evidence that at the time of the termination hearing, these parents were in no position to have the child returned to their care. In fact, the mother concedes as much by only arguing the child could have been returned "within a few months of the hearing." The theme of the father's argument on appeal is similar. We therefore conclude the evidence was sufficient to support termination of both parents' parental rights under Iowa Code section 232.116(1)(f).

B.      Best Interests and Statutory Exceptions

Both parents contend termination is not in the child's best interests and a statutory exception should preclude termination. In support of these arguments, both parents cite to their "strong bond" with the child and the potential effect on the child resulting from a severance of the parent-child relationship. *See* Iowa Code § 232.116(2), (3)(c). They also argue their parental rights should not be terminated because the child is in relative care. *See id.* § 232.116(3)(a).

"In considering whether to terminate the rights of a parent . . . [we] give primary consideration to the child's safety, to the best placement for furthering the long-term nurturing and growth of the child, and to the physical, mental, and emotional condition and needs of the child." *Id.* § 232.116(2). Regarding exceptions to termination, "[t]he court need not terminate the relationship between the parent and child if" a "relative has legal custody of the child" or "the termination would be detrimental to the child at the time due to the closeness of

the parent-child relationship." *Id.* § 232.116(3)(a), (c). The application of the statutory exceptions to termination is "permissive not mandatory." *M.W.* 876 N.W.2d at 225 (quoting *A.M.*, 843 N.W.2d at 113).

It is clear that both parents share a bond with the child. Lacking in the record, however, is clear and convincing evidence that the severance of the parent-child relationship will be detrimental to the child. After the parents' stumbles in mid-2017, they had little, if any, contact with the child for months. The record reveals the lack of contact with her parents had little, if any, effect on the child. This young child has been in the same relative placement for more than fifteen months. The child is integrated into this home and removing her would be emotionally harmful to her. The child refers to her relative placements as mom and dad. Contrary to what the parents have been able to provide, the relatives have provided the child with stability and are willing to continue to do so on a permanent basis. Continued stability and permanency are in this child's best interests. *See* Iowa Code § 232.116(2)(b); *M.W.*, 876 N.W.2d at 224–25 (concluding termination was in best interests of children where children were well-adjusted to home with their relatives, the relatives were "able to provide for their physical, emotional, and financial needs," and the relatives were prepared to adopt the children). The statutory exception contained in section 232.116(3)(a) may only be applied when "[a] relative has *legal* custody of the child." (Emphasis added.) Here, the relatives did not have legal custody as required to satisfy the exception.

We agree with the juvenile court that termination was in the child's best interests. We find the application of the permissive statutory exceptions to termination under Iowa Code section 232.116(3) to be unwarranted in this case.

C.     Reasonable Efforts

Next, the father argues "[r]easonable efforts have not been met in this case." DHS is required to "make every reasonable effort" toward reunification. Iowa Code § 232.102(9). The father raised the issue of reasonable efforts in his motion to dismiss at the termination hearing. On appeal, he alleges he raised the reasonable-efforts issue in prior hearings. However, nothing in our record supports the allegation that the reasonable-efforts argument was raised any time prior to the termination hearing. *See In re F.W.S.*, 689 N.W.2d 134, 135 (Iowa 2005) (noting "[i]t is the appellant's duty to provide a record on appeal affirmatively disclosing the alleged error relied upon" and appellate courts "may not speculate as to what took place or predicate error on such speculation"). "[T]he parents have a responsibility to demand services prior to the termination hearing." *In re L.M.W.*, 518 N.W.2d 804, 807 (Iowa Ct. App. 1994).

Because there is no evidence the father attempted to raise this issue prior to the termination hearing, he has waived any error. *See id.*

D.     Reopening of the Record

Finally, the father argues the juvenile court abused its discretion in declining to reopen the record in the termination proceeding to consider additional facts. In a trial to the court, the court has broad discretion to reopen the evidence. *In re J.R.H.*, 358 N.W.2d 311, 318 (Iowa 1984). "Such discretion is to be liberally construed." *Id.* "Failure to reopen the evidence may be

considered an abuse of discretion if the party who sought to reopen is prejudiced." *In re B.M.*, No. 00-1534, 2001 WL 984842, at \*2 (Iowa Ct. App. Aug. 29, 2001).

In the father's motion, the only cited incident potentially relevant to the termination proceeding was that the parents recently moved into a three-bedroom home. The record reveals that, at the time of the termination hearing, the parents were already living in a three-bedroom home not far from where the new residence was located. The juvenile court ruled "this is not newly discovered evidence warranting the reopening of the record." We find no abuse of discretion in the juvenile court's decision and affirm the same.

## IV. Conclusion

We affirm the termination of both parents' parental rights.

**AFFIRMED ON BOTH APPEALS.**