**IN THE COURT OF APPEALS OF IOWA**

No. 19-1289
Filed December 18, 2019

**IN THE INTEREST OF M.M.,**
**Minor Child,**

**M.U., Mother,**
    Appellant.
_____

    Appeal from the Iowa District Court for Washington County, Daniel Kitchen,

District Associate Judge.

    A mother appeals the termination of her parental rights. **AFFIRMED.**

    John G. Daufeldt of Daufeldt Law Firm, P.L.C., Conroy, for appellant

mother.

    Thomas J. Miller, Attorney General, and Mary A. Triick, Assistant Attorney

General, for appellee State.

    Kathryn J. Salazar of Schlegel & Salazar, L.L.P., Washington, attorney and

guardian ad litem for minor child.

    Considered by Bower, C.J., and May and Greer, JJ.

**BOWER, Chief Judge.**

A mother appeals the termination of her parental rights to her child, M.M., who is under three years of age; was adjudicated a child in need of assistance (CINA) on May 25, 2017; and has been removed from the mother's custody since March 20, 2018.[1] She asserts she has been denied due process, there has been no showing that termination of parental rights is in the child's best interests, and she should have been granted an additional six months to seek reunification.[2] On our de novo review, *In re A.S.*, 906 N.W.2d 467, 472 (Iowa 2018), we affirm.

We reject the mother's claim she was denied due process.[3] *See In re A.M.H.*, 516 N.W.2d 867, 870 (Iowa 1994) ("Generally, the fundamental requirement of due process is an opportunity to be heard.").[4] The mother had proper notice of the hearing. As will be set out below, the mother was represented by able and zealous counsel. Her counsel was able to confront and cross-examine

---

[1] The mother appealed the child's removal, which was upheld on appeal. *In re T.B. & M.M.*, No. 18-0767, 2018 WL 4929737, at *4–5 (Iowa Ct. App. Oct. 10, 2018).

[2] The father's rights were also terminated. He does not appeal.

[3] The mother argues DHS did not follow its own written policy at M.M.'s removal and during case permanency reviews. The State and the guardian ad litem assert this claim was not properly preserved, as the complaints should have been made earlier in the CINA proceedings. We agree. *See In re L.M.W.*, 518 N.W.2d 804, 807 (Iowa Ct. App. 1994) (finding that when a parent fails to raise an issue at the appropriate time, he or she waives the right to raise the issue at a later point).

[4] As stated in *A.M.H.*, 516 N.W.2d at 870:

> Generally, the fundamental requirement of due process is an opportunity to be heard. This may include a right to notice of the hearing, to confront and cross-examine adverse witnesses, to be represented by counsel, to an impartial decision maker, and to a decision based solely on legal rules and the evidence presented at the hearing. To demonstrate compliance with the last requirement, "the decision maker should state the reasons for his determination and indicate the evidence he relied on."

(Citations omitted.)

adverse witnesses, and an impartial decision maker rendered a decision based on pertinent legal rules and the evidence presented at the hearing. *See id.*

The mother has long struggled with methamphetamine abuse.[5] At the time of the January 24, 2019 termination hearing, the mother testified she was three-days sober when she entered her round of substance-abuse treatment on January 3, 2019.[6] She hoped to enter a halfway program after completing inpatient care. She also testified she needed mental-health treatment but had not participated during the pendency of these juvenile proceedings. When asked about her ability to parent while using methamphetamine, the mother testified:

> Q. Do you feel like you are providing good care to your children when you are not sober? A. When I'm not sober?
> Q. Correct. A. If I'm not sober, I'm not caring for them.
> Q. You've had care of your children during this case when you've been using; correct? A. A slight.
> Q. And do you feel like you're capable of caring for your children when you're using? A. No.

When asked about her drug usage, the mother testified:

> Q. So is it fair to say two weeks of sobriety would have been the maximum since March of 2018 or less? A. No, I would say [thirty] days, like, here and there, honestly.
> Q. So maximum [thirty] days in approximately the last [ten] months? A. Yeah.

The mother also had pending drug-related criminal charges.

---

[5] The mother has four older children, none of whom are in her care. Because of the mother's drug usage and its effects on her parenting, the mother's involvement with the department of human services (DHS) includes from November 2011 to March of 2014; again from December 2014 to March 31, 2015; and from October 1, 2016, when initially voluntary services were provided to her, to now.

[6] The mother had several prior admissions to substance-abuse-treatment programs, including: successfully completing a program in 2011; an unsuccessful discharge from a program in March 2012; successfully completing a program in August 2012 (but relapsing shortly thereafter); and a discharge for non-compliance in April 2017 while M.M. was in her care.

The termination hearing was continued until February 19, to determine whether the mother's probation would be revoked. At the resumption of the termination hearing, the mother testified she had completed inpatient treatment on January 31 and was able to enter the halfway-house program. She testified she was currently involved in individual and group mental-health counseling to deal with underlying issues of trauma. She was also taking medications for anxiety and depression. The mother stated she had obtained employment and was able to reside in the halfway house for ninety days. She was attending Narcotics Anonymous meetings. She also testified her criminal charges did not result in the revocation of probation or loss of a prior deferred judgment. However, she had been found in contempt "by willfully and intentionally failing to comply with her probation agreement" and was sentenced to 180 days in jail. Contempt could be purged, however, "by successfully completing the substance abuse treatment program at Prelude and by successfully completing all requirements of probation."

The termination hearing was again continued until March 6 to allow the mother to present testimony from her residential substance-abuse counselor, Kinsey Wohlers. Wohlers testified the mother appeared to be motivated, was participating in the halfway-house programming, and was addressing her mental-health and substance-abuse issues. Wohlers also testified "the national average, [for relapse for methamphetamine is] probably nine out of ten," with relapse more likely within the first six months.

On May 29, 2019, the juvenile court entered an order terminating the mother's parental rights to M.M., noting that "[a]t the time of hearing, she was residing in the Prelude 'halfway house' program with no firm housing arranged,

and shifting employment. [The mother] testified herself that she was not ready to provide the care needed for [M.M.] to reside with her." The court determined that in light of the mother's participation in numerous treatments, "[c]lear and convincing evidence indicates that six more months are not likely to change [the mother's] long-established pattern of behavior."

The mother does not contest the existence of grounds for termination pursuant to Iowa Code § 232.116(1)(h) (2018). *See In re A.M.*, 843 N.W.2d 100, 110–11 (Iowa 2014) ("Under Iowa Code section 232.116(1)(h), the court may terminate the rights of a parent to a child if: (1) the child is three years old or younger, (2) the child has been adjudicated a CINA under section 232.96, (3) the child has been out of the parent's custody for at least six of the last twelve months or the last six consecutive months, and (4) '[t]here is clear and convincing evidence that the child cannot be returned to the custody of the child's parents as provided in section 232.102 at the present time.'" (alteration in original) (citation omitted)).

We appreciate the difficulty the mother faces in attempting to maintain sobriety. She has a long history of substance abuse and is now addressing difficult mental-health issues. Her road to recovery will be long. But, in light of the mother's lengthy history of substance abuse, her struggle to avoid relapse, and her inability to refrain from substance abuse for any length of time when not in a controlled setting throughout these juvenile court proceedings, we agree with the juvenile court an extension was not warranted. *See* Iowa Code § 232.104(2)(b) (requiring the court to be able to enumerate factors, conditions, and expected behavior changes would eliminate the need for removal at the end of the extension).

We also agree with the State, the guardian ad litem, and the juvenile court that termination of parental rights and adoption will best provide for the child's "safety," "the long-term nurturing and growth of the child," and the child's "physical, mental, and emotional condition and needs." *See id.* § 232.116(2). At the time of the termination trial's final day, M.M. had been out of the mother's custody for one year and the mother had been sober—in a controlled setting—for less than three months. The statutory time frame for reunification with a child under the age of three is six months. *Id.* § 232.116(1)(h)(3). "Once the limitation period lapses, termination proceedings must be viewed with a sense of urgency." *In re C.B.*, 611 N.W.2d 489, 495 (Iowa 2000); *see also A.M.*, 843 N.W.2d at 112 ("It is well-settled law that we cannot deprive a child of permanency after the State has proved a ground for termination under section 232.116(1) by hoping someday a parent will learn to be a parent and be able to provide a stable home for the child." (citation omitted)).

The mother argued a guardianship was preferable. However, "a guardianship is not a legally preferable alternative to termination." *A.S.*, 906 N.W.2d at 477 (citation omitted). The child is doing well in a stable placement and deserves permanency. Because grounds for termination exist and termination is in the best interests of the child, we affirm.

**AFFIRMED.**