# IN THE COURT OF APPEALS OF IOWA

No. 20-0080
Filed March 18, 2020

IN THE INTEREST OF G.V.,
Minor Child,

A.V., Mother,
        Appellant.
_____

        Appeal from the Iowa District Court for Boone County, James B. Malloy,

District Associate Judge.


        A mother appeals the termination of her parental rights to her child.

**AFFIRMED.**


        Chad E. Schneider of Hastings, Gartin, & Boettger, LLP, Ames, for appellant

mother.

        Thomas J. Miller, Attorney General, and Ellen Ramsey-Kacena, Assistant

Attorney General, for appellee State.

        Matthew Mauk of Mauk Law Office, Ames, attorney and guardian ad litem

for minor child.


        Considered by Vaitheswaran, P.J., and Doyle and May, JJ.

**MAY, Judge.**

A mother appeals the termination of her parental rights to her child, G.V. She claims termination is not in the child's best interest, her strong bond with the child should preclude termination, the juvenile court failed to consider a modification to the mother and father's dissolution decree, and the State did not make reasonable efforts toward reunification. We affirm.

**I.      Facts and Prior Proceedings**

G.V. was born in January 2009. In November 2017, the Iowa Department of Human Services (DHS) learned the mother was using methamphetamine while caring for G.V. The district court adjudicated G.V. as a child in need of assistance in January 2018. G.V. remained in the mother's custody because the mother was living with her parents at the time and she was cooperating with DHS.

By March, though, the situation had changed. The mother became "uncooperative with [DHS] with regards to testing and even in meeting with the DHS or the [Family Safety, Risk, and Permanency (FSRP)] worker." So G.V. was removed from the mother's custody and placed with the father.

Throughout the pendency of this case, the mother's drug use was a problem. At a substance-abuse evaluation in July 2019, the mother reported that she last used methamphetamine on June 28. And, in August 2018, the mother was arrested for multiple crimes, including possession of methamphetamine. Despite this and numerous positive drug tests, she continued to deny drug use and did not seek treatment as recommended by DHS.

In September 2019, the State filed a petition to terminate the mother's rights. Following hearing, the district court terminated the mother's parental rights under Iowa Code section 232.116(1)(e) and (f) (2019). The mother now appeals.

## II. Standard of Review

We review termination proceedings de novo. *In re P.L.*, 778 N.W.2d 33, 40 (Iowa 2010). "We will uphold an order terminating parental rights where there is clear and convincing evidence of the statutory grounds for termination. Evidence is clear and convincing when there is no serious or substantial doubt as to the correctness of the conclusions of law drawn from the evidence." *In re T.S.*, 868 N.W.2d 425, 431 (Iowa Ct. App. 2015) (citing *In re D.W.*, 791 N.W.2d 703, 706 (Iowa 2010)).

## III. Analysis

We generally use a three-step analysis to review the termination of parents' rights. *In re A.S.*, 906 N.W.2d 467, 472 (Iowa 2018). We must determine: (1) whether grounds for termination have been established, (2) whether termination is in the children's best interests, and (3) whether we should exercise any of the permissive exceptions to termination. *Id.* at 472–73. Finally, we consider any additional arguments raised by the parents.

### A. Grounds for Termination

Our first step is to determine whether the State has proved grounds for termination under Iowa Code section 232.116(1). *Id.* But the mother concedes the grounds for termination were established. So we move to the next step of the analysis.

**B. Best Interest**

We next consider the best interest of G.V.  *See* Iowa Code § 232.116(2).

Our analysis is governed by Iowa Code section 232.116(2), which states:

> In considering whether to terminate the rights of a parent under this
> section, the court shall give primary consideration to the child's
> safety, to the best placement for furthering the long-term nurturing
> and growth of the child, and to the physical, mental, and emotional
> condition and needs of the child.

The juvenile court found—and we agree—termination is in G.V.'s best

interest for the following reasons:

> The mother has shown a continued pattern of placing her personal
> needs ahead of the needs of the child.  She has been unable to give
> up the use of methamphetamine.  The father has devoted a
> substantial period of time in caring for the child, and his wife
> expressed her desire to adopt [G.V.].  The child's physical, mental,
> and emotional needs can be best met by continued placement with
> the father.

But the mother argues termination is not in G.V.'s best interest because (1)

G.V. is "significantly bonded" with her and (2) there is an alternative to termination

that is in G.V.'s best interest—the father could obtain full legal custody through

modification of their dissolution decree.[1]

We first look at the bond between G.V. and the mother.  We adopt the

juvenile court's finding "[i]t is clear that [the mother] loves" G.V.  And it is true the

mother was G.V.'s primary caretaker for much of his life.  But their bond has surely

deteriorated.  G.V. became angry with his mother when she missed visitations.

---

[1] We note the mother's petition on appeal contained an attachment in support of
this argument.  Because this document is not part of our record, we did not
consider it.  *See, e.g.*, *In re Marriage of Keith*, 513 N.W.2d 769, 771 (Iowa Ct. App.
1994) ("We are limited to the record before us and any matters outside the record
on appeal are disregarded.").

G.V. has even refused talk to her on the phone. And G.V. has told his father as well as DHS and FSRP workers that he did not want to have phone calls or visitations with the mother. Conversely, G.V. has done well in the father's care.

Moreover, permanency is one of "the defining elements" in the best-interest determination. *In re J.E.*, 723 N.W.2d 793, 802 (Iowa 2006) (Cady, J., concurring specially). By the mother's own admission, she wants to be able "to revisit the custody issue and seek a modification when she has reached stability and sobriety." But "we cannot deprive a child of permanency after the State has proved a ground for termination under section 232.116(1) by hoping someday a parent will learn to be a parent and be able to provide a stable home for the child." *In re A.M.*, 843 N.W.2d 100, 112 (Iowa 2014) (quoting *P.L.*, 778 N.W.2d at 40). Termination will allow G.V. to obtain the permanency he needs and deserves. This step of our analysis is satisfied.

### C. Permissible Exceptions

Next, we look at the permissible exceptions under Iowa Code section 232.116(3). The parent bears the burden of proving an exception exists. *A.S.*, 906 N.W.2d at 476. Here, the mother contends her close bond with G.V. precludes termination. She also contends that the maternal grandparents are bonded to G.V. But this relationship is not considered under Iowa Code section 232.116(3).

Iowa Code section 232.116(3)(c) authorizes the juvenile court to preclude termination if "[t]here is clear and convincing evidence that the termination would be detrimental to the child at the time due to the closeness of the parent-child relationship." Again, we question the strength of the bond between G.V. and the mother. At the termination hearing, the mother conceded G.V. had stopped talking

to her. She said the issue began in April or May 2019—and has "gotten worse." So it seems G.V. has already begun to distance himself from the mother. We find no exception precludes termination.

### D. Additional Claims

Finally, the mother makes two additional claims: (1) the juvenile court failed to consider that the father obtained full legal custody of G.V. following the modification of their dissolution decree and (2) the State failed to make reasonable efforts toward reunification.

Because the modification of the dissolution decree is not part of our record, we may not consider it. *See Keith*, 513 N.W.2d at 771. Therefore, we decline to address that claim.

We turn to the reasonable-efforts claim. The mother contends she had difficulty communicating with DHS and FSRP workers, she did not receive requested additional services, and the father was not supportive and cooperative in the reunification process. But the State counters that, because the mother never requested additional services, error has not been preserved. We agree.

The State is required "to 'make every reasonable effort' to reunify the family as quickly as possible, consistent with the best interests of the children." *In re S.H.*, No. 15-1939, 2016 WL 757421, at *4 (Iowa Ct. App. Feb. 24, 2016) *(*quoting Iowa Code § 232.102(7) (2016)); *see* Iowa Code § 232.102(9) (2019). "[P]arents have a responsibility to object when they claim the nature or extent of services is inadequate" and such objection should be made early in the process. *In re L.M.*, 904 N.W.2d 835, 839–40 (Iowa 2017). "[I]f a parent fails to request other services at the proper time, the parent waives the issue." *Id.* at 840 (quoting *In re C.H.*, 652

N.W.2d 144, 148 (Iowa 2002)). Because we found no request for these additional services in the record,[2] we find the mother has not preserved error. *See id.* at 839–40.

## IV. Conclusion

The juvenile court properly terminated the mother's parental rights.

**AFFIRMED.**

---

[2] We note the mother has sent letters to the juvenile court with various complaints about DHS, the father, and the case. For example, one letter alleged that "DHS, FSRP, [the mother's] family, and [the mother's] lawyer have not helped [G.V.] or [the mother] one bit." In order to preserve error, the mother needed to make a request for specific services rather than general complaints. *See In re L.M.W.*, 518 N.W.2d 804, 807 (Iowa Ct. App. 1994).