**IN THE COURT OF APPEALS OF IOWA**

No. 23-0729
Filed August 30, 2023

**IN THE INTEREST OF J.C., T.G., P.F., and D.W.,**
**Minor Children,**

**D.C., Mother,**
    Appellant,

**J.C., Sr., Father of J.C.,**
    Appellant.
_____


Appeal from the Iowa District Court for Scott County, Cheryl E. Traum, District Associate Judge.


The mother of four children and the father of the oldest child separately appeal the termination of their parental rights. **AFFIRMED ON BOTH APPEALS.**


G. Brian Weiler, Davenport, for appellant mother.

Barbara E. Maness, Davenport, for appellant father of J.C.

Brenna Bird, Attorney General, and Mackenzie Moran, Assistant Attorney General, for appellee State.

Jennifer Olsen of Olsen Law Office, Davenport, attorney and guardian ad litem for minor children.


Considered by Bower, C.J., and Tabor and Greer, JJ.

**TABOR, Judge.**

This appeal involves four children: J.C. born in 2016, T.G. born in 2018, P.F. born in 2019, and Da.W. born in 2022. Their mother, Darielle, and J.C.'s father, Jerry, separately challenge the juvenile court order terminating parental rights.[1] In her appeal, Darielle contends the State did not prove a statutory ground for termination nor that termination was in the children's best interests. She also believes the State did not make reasonable efforts to reunite her family. In his appeal, Jerry lobbies to place J.C. in a guardianship and argues that preserving his parental rights is in his son's best interests. Finding no cause for reversal in either parent's arguments, we affirm the termination order.[2]

## I.    Facts and Prior Proceedings

The unexplained death of a two-month-old child brought this family to the attention of the Iowa Department of Health and Human Services in November 2020. That infant, De.W., was found unresponsive in her crib. An initial autopsy revealed injuries at different stages of healing. Both Darielle and Devion had been caretakers for the infant, but neither were charged for her injuries or death.[3]

---

[1] The order also terminated the parental rights of three other fathers. The fathers of T.G. and P.F. do not appeal. Our supreme court dismissed an appeal by D.W.'s father, Devion, for breaching appellate rules.

[2] We review termination orders de novo. *In re P.L.*, 778 N.W.2d 33, 40 (Iowa 2010). We respect the juvenile court's factual findings and in-person observations, but we are not bound by them. *See In re W.M.*, 957 N.W.2d 305, 312 (Iowa 2021). Our top priority is the children's best interests. *See In re J.E.*, 723 N.W.2d 793, 802 (Iowa 2006) (Cady, J., concurring specially) (identifying safety and the need for a permanent home as the "defining elements" in the best-interests determination).

[3] The department case manager testified at the termination hearing that the criminal investigation was ongoing.

After De.W.'s death, the juvenile court approved the department's removal of the three older children. They were adjudicated as children in need of assistance (CINA) in February 2021 and remained out of parental care based on concerns about domestic violence. Then in January 2022, Darielle and Devion had another child together, Da.W. The court approved the removal of that child from parental care when he was two days old. He was placed with a different foster family. The children have never returned home.

Throughout the CINA cases, Darielle did not recognize the danger Devion posed to herself or the children. She did not access services to address the domestic violence that her family suffered. Neither did she address her mental-health or substance-abuse concerns. Her visits with the children were inconsistent, and she was not able to effectively parent all four children at the same time.

J.C.'s father, Jerry, has not been a reliable parent. He lived out-of-state during the CINA case. And he was evasive with the department about where he was staying. He had some phone and video visits with his son but was inconsistent with those contacts. He also was on probation for a domestic violence charge in Missouri.

Following a two-day hearing, the juvenile court terminated the parental rights of Darielle under Iowa Code section 232.116(1), paragraphs (b), (d), (e), (f), (h), (i), and (*l*) (2023). The court terminated Jerry's rights under paragraphs (b), (d), (e), (f), and (i). Those parents now appeal.

## II.     Analysis

We start with Darielle's appeal.  She claims the juvenile court erred in terminating her rights because she complied with the department's expectations, engaged in regular visitation, demonstrated a bond with the children, and "was never proven to be responsible" for harming De.W.  But the argument in her petition on appeal is limited to this sentence: "The mother disagrees with each finding that a subsection of 232.116(1) was proven with respect to the mother."

We recognize termination appeals are expedited.  *See In re J.A.D.-F.,* 776 N.W.2d 879, 883 (Iowa Ct. App. 2009).  But the petitioner must state "what findings of fact or conclusions of law the district court made with which you disagree *and why,* generally referencing a particular part of the record, witnesses' testimony, or exhibits that support your position on appeal."  Iowa R. App. P. 6.1401–Form 5 (emphasis added).  Here, the juvenile court terminated on seven grounds.  By citing no subsections, the mother's petition on appeal is too minimal to preserve her claim for our review.[4]

Her next issue is no better briefed.  She claims the juvenile court erred in concluding that termination was in the children's best interests.  But she does not cite the best-interests framework at Iowa Code section 232.116(2).  Instead, she cites Iowa Code section 232.116(3)(c).  That section requires the parent to prove that "[t]here is clear and convincing evidence that the termination would be detrimental to the child at the time due to the closeness of the parent-child

---

[4] If we could reach the merits of her challenge to the statutory grounds, we would find that the children could not be safely returned to her care given the ongoing concerns of domestic violence.  *See* Iowa Code § 232.116(1)(f), (h).

relationship." *See In re A.S.*, 906 N.W.2d 467, 476 (Iowa 2018). Without any guidance from her petition on appeal, we cannot find that termination of her parental rights would harm the children because of the closeness of their relationship with Darielle.

As her final issue, Darielle contends that the department did not make reasonable efforts to provide her with more liberal visitation with the children. She also complains that the department required her to call or text at an "arbitrary" time to confirm scheduled visits. True, the department "must make reasonable efforts to reunify families *in each case.*" *In re L.M.W.*, 518 N.W.2d 804, 807 n.1 (Iowa Ct. App. 1994) (emphasis in original). But if services aimed to remove the risk responsible for limited visitation have not met their objective, then increased visitation would not be in the children's best interests. *In re M.B.*, 553 N.W.2d 343, 345 (Iowa Ct. App. 1996). Given the mother's inconsistent participation in visitation, it was reasonable for the department to require confirmation. And the unaddressed threat of domestic violence weighed against allowing unsupervised visitation. So we decline to reverse on reasonable-efforts grounds.

We turn next to Jerry's appeal. He contends that termination of his parental rights was not in J.C.'s best interests. But, again, his petition cites section 232.116(3) rather than the best-interests test in section 232.116(2). As noted above, section 232.116(3)(c) requires the parent to prove by clear and convincing evidence that termination will harm the child because of the closeness of the parent-child relationship.

Jerry contends that he has a strong bond with J.C., and that he "has continued to take steps toward reunification even when separated by distance."

Indeed, the record shows that father and son have maintained a connection despite their separation. But the record also shows that Jerry has let his son down repeatedly. For example, Jerry has promised to call his son on a weekend or play video games remotely, and not followed through. The service provider testified to the negative effect on J.C. "It disappoints him greatly. He pays attention to promises that are made to him, and he has expectations that if Dad says he's going to call, then he's going to call." J.C. was also upset when his father did not reach out on the child's birthday. While these are small examples, they show that Jerry has not placed a priority on nurturing his son. On this record, we are not persuaded that termination will hurt J.C. because of the closeness of his relationship with his father.

Finally, Jerry mentions in passing that placing J.C. in a guardianship with the child's maternal grandmother would be a better resolution than termination. The State responds that a guardianship would leave J.C. in limbo waiting for his father to demonstrate a continued interest and ability to care for him. We agree with the State. These facts do not support creation of a guardianship over termination. *See A.S.*, 906 N.W.2d at 477.

**AFFIRMED ON BOTH APPEALS.**