# IN THE COURT OF APPEALS OF IOWA

No. 18-1232
Filed January 9, 2019

**IN THE INTEREST OF L.V., M.V., and L.V.,**
**Minor Children,**

**A.V., Mother,**
　　Appellant,

**R.V., Father,**
　　Appellant.

_____

Appeal from the Iowa District Court for Mahaska County, Rose Anne Mefford, District Associate Judge.

The mother and father separately appeal the termination of their parental rights. **AFFIRMED ON BOTH APPEALS.**

Jeffrey A. Smith, Oskaloosa, for appellant mother.

Michael S. Fisher of Fisher Law Office, Oskaloosa, for appellant father.

Thomas J. Miller, Attorney General, and John McCormally, Assistant Attorney General, for appellee State.

Misty White Willis of White Law Office, Sigourney, guardian ad litem for minor children.

Considered by Vogel, P.J., and Vaitheswaran and McDonald, JJ.

**VOGEL, Presiding Judge.**

The mother and father separately appeal the termination of their parental rights to their minor children: L.V.1, born in January 2010; M.V., born in July 2012; and L.V.2, born in February 2014. Both argue termination is not in the best interests of the children and the State failed to provide adequate services to both parents. Finding neither precludes termination, we affirm.

## I. Background Facts and Proceedings

The Iowa Department of Human Services (DHS) first took notice of this family on February 26, 2016, after allegations the father repeatedly spanked L.V.1 with a belt, leaving welts and bruising. L.V.1 was treated for her injuries in the emergency room. A safety plan was created, which provided the father would not return to the family home, and the mother was allowed to take L.V.1, M.V., and L.V.2 home. The mother agreed to contact DHS if the father returned. The father told DHS L.V.1 did not do anything wrong before he spanked her, he was just angry. However, the father later retracted this assertion and stated his attorney told him to lie and say he acted out of anger.

On or around March 9, DHS received a phone call from a confidential informant claiming the father had continued to be around the children since February 26. According to the informant, L.V.1 had fresh fingerprint-shaped bruises, L.V.1 stated her father hit her with his hand "because the policeman took his belt," and the father had previously kicked M.V. Because the mother violated the safety plan and there were reports of further abuse, the children were removed on March 10 and placed in the care of their maternal grandmother. The children were adjudicated children in need of assistance on March 29. After more than one

year of offered services, the father's incarceration, and little progress by the mother to support reunification, the State filed a petition to terminate parental rights on May 31, 2017. A termination hearing was held on December 13. On July 16, 2018, the district court found the State had proved by clear and convincing evidence the grounds for termination under Iowa Code section 232.116(1)(f), (h), and (i) (2017). The mother and father separately appeal.[1]

## II. Standard of Review

We review termination-of-parental-rights proceedings de novo. *In re M.W.*, 876 N.W.2d 212, 219 (Iowa 2016). "We are not bound by the juvenile court's findings of fact, but we do give them weight . . . ." *In re D.W.*, 791 N.W.2d 703, 706 (Iowa 2010). "We will uphold an order terminating parental rights if there is clear and convincing evidence of grounds for termination under Iowa Code section 232.116." *Id.*; *accord* Iowa Code § 232.117(3) ("If the court concludes that facts sufficient to sustain the petition have been established by clear and convincing evidence, the court may order parental rights terminated."). "'Clear and convincing evidence' means there are no serious or substantial doubts as to the correctness [of] conclusions of law drawn from the evidence." *In re C.B.*, 611 N.W.2d 489, 492 (Iowa 2000).

---

[1] Neither the mother nor the father raise an argument that the grounds for termination under Iowa Code section 232.116(1)(f), (h), or (i) were not met. Thus, we do not consider this step. *See In re P.L.*, 778 N.W.2d 33, 40 (Iowa 2010) (providing the court need not consider the existence of the grounds for termination under section 232.116(1) because parent did not dispute the issue).

### III. Best Interests

The mother and father both argue the district court improperly determined termination is in the best interests of the children. "In considering whether to terminate the rights of a parent . . . , the court shall give primary consideration to the child[ren]'s safety, to the best placement for furthering the long-term nurturing and growth of the child[ren], and to the physical, mental, and emotional condition and needs of the child[ren]." Iowa Code § 232.116(2). First, the mother asserts termination is not in the best interests of the children because "the children know their parents, love their parents, and have bonded with their parents." Second, the father argues "[p]ermanently separating a father from his children due to his current incarceration is not in the children's long-term best interest, especially when there are other options to ensure the children's safety while continuing the relationship with their father."

In addition to the original injuries, L.V.1, months later, informed DHS the mother sometimes hits her and leaves scratches on her arms and face. A DHS worker also noticed a mark on L.V.2's face, which caused L.V.2 to become upset and state it was caused by her mother. The DHS worker also opined the children could not be returned to the mother because of the children's reports that she was physically abusing them and they did not feel safe with her. Additionally, the record shows the children feel safe with their grandmother, are well cared for, and are well bonded to her.

As for the father's best-interests claim, a DHS worker opined the children could not be returned to the father due to his failure to both accept responsibility for the physical abuse he caused and foster a bond with his children. Considering

the physical abuse involving both parents, including their failure to acknowledge and prevent additional abuse, we agree with the district court termination is in the children's best interests. *See id.*; *see also In re J.E.*, 723 N.W.2d 793, 802 (Iowa 2006) (Cady, J., specially concurring) (noting the children's safety and need for a permanent home are the "defining elements" when determining the best interests of the children).

## IV. Services Provided to the Parents

The mother and father separately raise the issue of lack of reasonable efforts toward reunification and services provided by the State.

> Although DHS must make reasonable efforts in furtherance of reunification, . . . parents have a responsibility to object when they claim the nature or extent of services is inadequate. A parent's objection to the sufficiency of services should be made early in the process so appropriate changes can be made. In general, if a parent fails to request other services at the proper time, the parent waives the issue and may not later challenge it at the termination proceeding.

*In re L.M.*, 904 N.W.2d 835, 839–40 (Iowa 2017) (internal quotation marks and citations omitted).

First, the mother asserts the father is responsible for all the physical-abuse concerns, his incarceration has given her "the ability to separate herself from her and the children's abuser," and DHS only required her to "secure employment and housing, both of which she procured." After the February 26, 2016 abuse incident, the mother violated the safety plan by allowing the father visitation with the children, which resulted in further abuse. After the children were placed in their grandmother's care, the mother was free to visit the children frequently; however, the grandmother reported she rarely did so, even on holidays. Furthermore, the

children began to report the mother abused them and opined they did not feel safe in her presence. The visits returned to being fully supervised as of December 4, 2017, because of the abuse allegations directed at the mother as well as the mother's continual need to be prompted by service providers to tend to the children's basic needs. Further, the mother did not object at any point to the level of services that were being provided. *In re L.M.W.*, 518 N.W.2d 804, 807 (Iowa Ct. App. 1994) ("[P]arents have a responsibility to demand services prior to the termination hearing.").

Second, the father asserts he "was not provided reasonable efforts to continue his relationship with his children during his incarceration.[2] No services were provided to the father to strengthen his relationship with his children, and no visits occurred during his term of imprisonment." However, a no-contact order is currently in place between the father and L.V.1 and is not set to expire until September 29, 2021. The department of corrections denied visits by M.V. and L.V.2 since the children are "direct relatives" of the father's victim and because the father had not participated in a prison treatment program to address domestic abuse and child endangerment. The father was allowed to appeal the May 3, 2017 denial of visitations, but as of the December 4, 2017 DHS report to the court, which was just prior to the termination hearing, the father had failed to do so. Further, although the father was allowed to send letters to M.V. and L.V.2, he only did so on a few occasions. Therefore, we find the services provided by DHS—including

---

[2] The father pled guilty to domestic abuse assault causing bodily injury, third or subsequent offense, a Class "D" felony, on May 27, 2016. A five-year sentence was imposed to run concurrent with another sentence.

family safety, risk, and permanency services; substance-abuse treatment for the mother; behavior health services for the mother; family team meeting; family interaction plan; play therapy; behavioral health intervention specialist for L.V.1; and assistance with transportation—were adequate with regards to both parents.

## V. Conclusion

We conclude termination is in the best interests of the children and the State provided adequate services.

**AFFIRMED ON BOTH APPEALS.**