# IN THE COURT OF APPEALS OF IOWA

No. 21-0051
Filed March 3, 2021

**IN THE INTEREST OF K.W.-A.,**
**Minor Child,**

**T.W., Mother,**
    Appellant.
_____

Appeal from the Iowa District Court for Webster County, Joseph B. McCarville, District Associate Judge.

A mother appeals the juvenile court order terminating her parental rights to her minor child. **AFFIRMED.**

Jessica L. Morton of Bruner, Bruner, Reinhart & Morton, LLP, Carroll, for appellant mother.

Thomas J. Miller, Attorney General, and Mary A. Triick, Assistant Attorney General, for appellee State.

Douglas Cook, Jewell, attorney and guardian ad litem for minor child.

Considered by Bower, C.J., and Doyle and Mullins, JJ.

**DOYLE, Judge.**

A mother appeals the juvenile court order terminating her parental rights to her minor child K.W.-A.[1] She contends the State failed to prove the grounds for termination. She denies termination of her parental rights is in the best interests of the child. She also contends the State failed to make reasonable efforts to reunify the child with her. And she asks for more time.

We review the mother's claims do novo. *See In re A.S.*, 906 N.W.2d 467, 472 (Iowa 2018). "We give weight to the factual determinations of the juvenile court but we are not bound by them. Grounds for termination must be proven by clear and convincing evidence. Our primary concern is the best interests of the child." *In re J.E.*, 723 N.W.2d 793, 798 (Iowa 2006) (citations omitted).

We typically use a three-step process to review the termination of a parent's rights. *In re A.S.*, 906 N.W.2d at 472. First, we determine whether a ground for termination under section 232.116(1) has been established. *See id.* at 472–73. If a ground for termination has been established, we then consider "whether the best-interest framework as laid out in section 232.116(2) supports the termination of parental rights." *Id.* at 473 (citation omitted). Finally, we consider "whether any exceptions in section 232.116(3) apply to preclude termination of parental rights." *Id.* (quoting *In re M.W.*, 876 N.W.2d 212, 220 (Iowa 2016)). "However, if a parent does not challenge [any of the three] step[s] in our analysis, we need not address [them]." *In re J.P.*, No. 19-1633, 2020 WL 110425, at *1 (Iowa Ct. App. Jan. 9, 2020).

---

[1] The father's parental rights were also terminated. He is not a party to this appeal

The juvenile court terminated the mother's parental rights under Iowa Code section 232.116(1)(g), (h) and (*l*) (2020). We may affirm if the record supports termination under any one of these grounds. *See In re A.B.*, 815 N.W.2d 764, 774 (Iowa 2012). Termination under section 232.116(1)(h) is appropriate if the child is three years old or younger, has been adjudicated a child in need of assistance (CINA), and has been removed from the parent's care for at least six of the last twelve months. The mother does not challenge proof of these three requirements. There must also be clear and convincing evidence that the child cannot be returned to the parent's care at the time of the termination hearing without exposing the child to harm that would lead to a new CINA adjudication. *See* Iowa Code § 232.116(1)(h)(4) (requiring "clear and convincing evidence that at the present time the child cannot be returned to the custody of the child's parents as provided in section 232.102"); *In re D.W.*, 791 N.W.2d 703, 707 (Iowa 2010) (interpreting the term "at the present time" to mean "at the time of the termination hearing"); *In re M.S.*, 889 N.W.2d 675, 680 (Iowa Ct. App. 2016) (noting a child cannot be returned to the custody of the parent if doing so would expose the child to any harm amounting to a new CINA adjudication).

The mother argues the evidence does not support a finding that the child could not be returned to her care at the time of the termination hearing. The child was born in August 2018 and tested positive for marijuana, methamphetamine, and amphetamines. The family came to the attention of the Iowa Department of Human Services (DHS) upon allegations that the mother used methamphetamine and marijuana weekly throughout her pregnancy. The child was removed from the

parents in October 2018 and adjudicated CINA. The child was placed with a pre-adoptive foster family.

Almost a year after the CINA adjudication, the petition to terminate parental rights was filed in September 2019. The first day of the hearing took place in February 2020. Up to that time the mother's housing and employment were unstable; she was inconsistent in receiving services; she missed some visits with the child; she was a no-show for some drug testing; she did not successfully complete drug treatment; she last tested positive for amphetamines, methamphetamine, and marijuana in December 2019; and she was subjected to domestic abuse by the father and was openly violating a no-contact order with him. The hearing reconvened in September and again in November 2020. The evidence showed that after several failed attempts, the mother finally successfully completed substance-abuse treatment by April 2020. But success was short-lived, as she tested positive for methamphetamine in June and September 2020. She refused a drug patch test offered in October 2020. She continued her relationship with the father despite the history of domestic abuse, his ongoing methamphetamine use, and his continued violent and threatening behavior. The mother did not capitalize on all the offered visitation time with the child. Visitation never progressed beyond supervised visitation. The mother refused to interact with the Family Centered Services worker. She failed to follow through with mental-health services. Upon our de novo review, we conclude the State proved by clear and convincing evidence that the child could not be returned to the mother at the time of the termination hearing without exposing the child to any harm amounting to a new CINA adjudication.

We next turn to whether termination is in the child's best interests. In determining best interests, we "give primary consideration to the child's safety, to the best placement for furthering the long-term nurturing and growth of the child, and to the physical, mental, and emotional condition and needs of the child." Iowa Code § 232.116(2). The "defining elements" are the child's safety and "need for a permanent home." *In re H.S.*, 805 N.W.2d 737, 748 (Iowa 2011) (citation omitted). The whole of the mother's best-interests argument is: "TW and the child are bonded. The law of the land is Families First. Not giving the child the opportunity to live with a biological parent who is able to fully care for the child is not in the child's best interests." Giving the issue such short shrift does not merit review. *See State v. Mann*, 602 N.W.2d 785, 788 n.1 (Iowa 1999) (explaining random mention of an issue, without elaboration or supporting authority, is insufficient to prompt an appellate court's consideration). To address the issue under these circumstances, we would be obliged "to assume a partisan role and undertake the appellant's research and advocacy." *Inghram v. Dairyland Mut. Ins. Co.,* 215 N.W.2d 239, 240 (Iowa 1974); *Soo Line R.R. v. Iowa Dep't of Transp.,* 521 N.W.2d 685, 691 (Iowa 1994) ("[R]andom mention of [an] issue, without elaboration or supportive authority, is insufficient to raise the issue for [appellate] consideration."). But even if the mother had fleshed out this issue, it would not merit relief.

Concerns about the mother's substance abuse, mental health, and domestic violence still remain. In addressing the best-interests issue, the juvenile court found:

> The child's safety is best ensured by termination for the following reasons: the parents can't get off drugs, they have unaddressed mental health issues, they continue to miss scheduled visitation, [the

father] has anger issues and assaultive behavior. All these conditions have persisted for years with little or no improvement by the parents. . . . The physical, mental, and emotional condition and needs of the child can be best met by termination of parental rights and adoption by the current foster family . . . .

We agree.

The mother was offered extensive services to correct the circumstances that caused removal but had not yet remedied those issues. The mother has simply not progressed to a point at which her child can be returned to her care. Her substance use presents a clear danger to the child's safety. *See A.B.*, 815 N.W.2d at 776 ("[A]n unresolved, severe, and chronic drug addiction can render a parent unfit to raise children."). Thus the element of safety supports termination. *See id.* ("No parent should leave his small children in the care of a meth addict—the hazards are too great." (citation omitted)). And, "It is well-settled law that we cannot deprive a child of permanency after the State has proved a ground for termination under section 232.116(1) by hoping someday a parent will . . . be able to provide a stable home for the child." *Id.* at 777 (quoting *In re P.L.*, 778 N.W.2d 33, 39 (Iowa 2010)). We conclude the mother has been given ample time—over two years from time of removal to the last termination hearing— to get her affairs in order. This child's best interests are best served by providing permanency and stability now. *See id.* at 778 ("It is simply not in the best interests of children to continue to keep them in temporary foster homes while the natural parents get their lives together." (quoting *In re C.K.*, 558 N.W.2d 170, 175 (Iowa 1997))). The child has been with the same foster family for over two years and is bonded to the foster parents; they are willing to adopt the child.

To the extent that the mother requests more time (she mentions it in passing), given the mother's track record and lack of participation in services, we are unable to conclude "the need for removal . . . will no longer exist at the end of the additional six-month period." *See* Iowa Code § 232.104(2)(b). Children do not come equipped with pause buttons. *See In re A.M.*, 843 N.W.2d 100, 112 (Iowa 2014) (holding that the court must not deprive children of permanency on the hope that someday the parent will be able to provide a stable home); *In re A.C.*, 415 N.W.2d 609, 613 (Iowa 1987) ("The crucial days of childhood cannot be suspended while parents experiment with ways to face up to their own problems."). The child's need for safety and permanency outweigh the rights and needs of the mother. *See In re C.S.*, 776 N.W.2d 297, 300 (Iowa Ct. App. 2009). In the over two years this case was pending, the mother failed to resolve the issues that impeded reunion with the child. It is now clear the mother is unable, now or in the near term, to provide the child with either the safety or the stability the child needs.

Finally, the mother also contends the State failed to make reasonable efforts to return the child to her care. *See* Iowa Code § 232.102(7) (requiring that the State "make every reasonable effort to return the child to the child's home as quickly as possible consistent with the best interests of the child"). She argues that although she was doing her part, the DHS failed to sua sponte increase visits with the child. She acknowledges that "typically a reasonable effort must be requested by a parent." Indeed, to preserve error on a reasonable-efforts challenge, a parent must complain to the juvenile court about the adequacy of the services "at the removal, when the case permanency plan is entered, or at later review hearings." *In re C.H.*, 652 N.W.2d 144, 148 (Iowa 2002); *In re S.J.*, No. 14-

0978, 2014 WL 4231161, at *2 (Iowa Ct. App. Aug. 27, 2014) ("A challenge to the sufficiency of the State's efforts to reunite parents with their children should be raised when the services are offered." (citing *In re L.M.W.,* 518 N.W.2d 804, 807 (Iowa Ct. App. 1994))). "[V]oicing complaints regarding the adequacy of services to a social worker is not sufficient." *C.H.*, 652 N.W.2d at 148. To sidestep this impediment, she argues,

> Visitation is the most basic service DHS offers, and it is unreasonable for DHS to stagnate a parent at minimal visitation without good reason, particularly where that parent has met the goals DHS set forth for her. Parents should not have to ask for DHS to offer the most basic part of their job.

We decline to depart from established case law requiring a parent to request additional services. "We are not at liberty to overturn Iowa Supreme Court precedent." *See State v. Hastings*, 466 N.W.2d 697, 700 (Iowa Ct. App. 1990). The mother never made a formal request for more services to the juvenile court. She therefore failed to preserve the issue for our review. In any event she failed to use all the visitation offered.

We conclude the State presented sufficient evidence to support termination of the mother's parental rights and that termination is in the best interests of the child. We reject the mother's reasonable–efforts argument and her request for more time. We therefore affirm termination of her parental rights to K.W.-A.

**AFFIRMED.**