595 N.W.2d 815 (1999)
In the Interest of M.B., M.B., and M.B., Minor Children,
M.B., Father, Appellant.
No. 98-0693.
Court of Appeals of Iowa.
March 31, 1999.
*816 Jack E. Dusthimer, Davenport, for appellant.
Thomas J. Miller, Attorney General, and Mary K. Wickman and Chris Odell, Assistant Attorney Generals, for appellee-State.
John R. Aitken, Davenport, guardian ad litem for minor child.
Considered by STREIT, P.J., and VOGEL and ZIMMER, JJ.
STREIT, P.J.
A father who has used violence to deal with our juvenile justice system appeals the termination of his parental rights. Morris B. claims he was not offered the necessary services to reunite him with his children. Because we find reasonable efforts were made by the State to provide services prior to termination of Morris's parental rights, we affirm the trial court.
Michelle and Morris B. are the parents of Michael, born in July 1993, Madison, born in July 1994, and Michelle, born in May 1996. Michael was adjudicated a child in need of assistance (CINA) pursuant to Iowa Code sections 232.2(6)(b), (c)(1), and (c)(2) (1993) on the basis of physical and emotional abuse and denial of proper care and supervision caused by Morris's domestic violence. Michelle and Madison were adjudicated CINA on November 26, 1996, pursuant to sections 232.2(6)(b) and (c)(2) on the basis of chronic failure of the parents to provide care, supervision, and medical care for the children despite services because, in part, of domestic violence. All three children have been in foster care or out of home placement since September 1996.
In July 1993, Morris threw a chair at the secretary for Family Resources and smashed a phone on top of her head. He was convicted of criminal mischief and assault resulting in injury. Morris was sentenced to terms of two years and one year. He was released from prison in January 1996. After his release, the court issued a protective order against Morris to protect Michelle, the children, and various service providers. In February 1997, Morris again dealt with social service agencies in a violent manner. He used profane language and threatened to kill social workers at Lutheran Social Services causing them to withdraw as a provider of services to the family. Morris was also banned from the Lutheran Hospital campus. On two occasions, he threatened the staff at the Batterer's Education program and, as a result, they also refused to offer services to the family. Because of similar happenings, the Department of Human Services requested a protective order prohibiting *817 contact between Morris and any of DHS's staff.
In April 1997, the Court issued a protective order prohibiting Morris from contacting several service agencies. The court ordered Morris to participate in services directed toward anger management and domestic violence at Vera French Community Mental Health Center. The court ordered Morris to show proof he resolved his anger management and domestic violence issues. Morris provided no such proof.
The State filed a petition to terminate Michelle and Morris's parental rights on October 5, 1997. Michelle consented to termination of her rights and Morris contested termination. After a hearing, the court terminated Morris's parental rights pursuant to Iowa Code sections 232.116(1)(d) & (e) in respect to M.J.B, (b), (f), & (g), in respect to M.L.B., and (f) and (g)[1] in respect to M.L.B. Morris appeals.
*818 The State has proven by clear and convincing evidence the elements of sections 232.116(1)(b), (d), (e), (f), and (g) have been met. The children have all been adjudicated to be in need of assistance and have been removed from the physical custody of their parents for at least six consecutive months. The children are all aggressive and violent, especially against each other. Their behavior worsened when they spent time with Morris. They do not function at an age-appropriate emotional or social level. Their parents have left them on more than one occasion and have denied them appropriate medical care. It is in these children's best interests that Morris's parental rights be terminated.
Morris does not allege the State has failed to prove by clear and convincing evidence the termination grounds in Iowa Code sections 232.116(1)(b), (d), (e), (f), and (g). Rather, Morris argues reasonable efforts were not made by the State to reunite him with his children through the provision of social services. See In re A.B., 554 N.W.2d 291, 294 (Iowa App. 1996).
Reasonable efforts to reunite parent and child are required prior to the termination of parental rights. In re T.C., 522 N.W.2d 106, 108 (Iowa App.1994); see generally Iowa Code § 232.102. Generally, DHS must make reasonable efforts to provide services to eliminate the need for removal. See Iowa Code § 232.102(9)(a) (1995).
Morris's contention reasonable services were not provided to reunite his family are without merit. Agency after agency, including Lutheran Social Services, the Batterer's Education Program, and the Department of Human Services, attempted to provide Morris services for his anger management and tendency to commit domestic violence. Rather than accept and participate in the services, he threatened service providers, causing them to legitimately fear for their own safety. The State cannot be expected to place staff members in physical danger to provide services to a parent. Morris's behavior was tantamount to a rejection of the services provided to him. In re T.T., 541 N.W.2d 552, 558 (Iowa App.1995). Morris's own behavior prevented him from partaking in services to aid reuniting him with his family.
Morris's contention is further belied by the fact that he had services available to him, even after the court ordered the State was not obligated to provide him services. Vera French Community Mental Health Center was willing to provide services to Morris. He did not participate in those services.
Even if we were to find the services provided were not reasonable, Morris never objected to the services offered to him during the juvenile proceedings regarding his children. While the State had the obligation to make the efforts, Morris had a responsibility to challenge or object to the services provided at the removal or review hearing. In re L.M.W., 518 N.W.2d 804, 807 (Iowa App.1994). It is too late to challenge the service plan at the termination hearing. See id. We find the services offered to Morris were reasonable under the circumstances of this case.
The trial court is affirmed.
AFFIRMED.
NOTES
[1] Iowa Code section 232.116(1) provides:

b. The court finds that there is clear and convincing evidence that the child has been abandoned or deserted.
c. The court finds that both of the following have occurred:
1. The court has previously adjudicated the child to be a child in need of assistance after finding the child to have been physically or sexually abused or neglected as the result of the acts or omissions of one or both parents, or the court has previously adjudicated a child who is a member of the same family to be a child in need of assistance after such a finding.
2. Subsequent to the child in need of assistance adjudication, the parents were offered or received services to correct the circumstance which led to the adjudication, and the circumstance continues to exist despite the offer or receipt of services.
d. The court finds that all of the following have occurred:
1. The child has been adjudicated a child in need of assistance pursuant to section 232.96.
2. The child has been removed from the physical custody of the child's parents for a period of at least six consecutive months.
3. There is clear and convincing evidence that the parents have not maintained significant and meaningful contact with the child during the previous six consecutive months and have made no reasonable efforts to resume care of the child despite being given the opportunity to do so. For the purpose of this subparagraph, "significant and meaningful contact" includes but is not limited to the affirmative assumption by the parents of the duties encompassed by the role of being a parent. This affirmative duty, in addition to financial obligations, requires continued interest in the child, a genuine effort to complete the responsibilities prescribed in the case permanency plan, a genuine effort to maintain communication with the child, and requires that the parents establish and maintain a place of importance in the child's life.
e. The court finds that all of the following have occurred:
(1) The child is four years of age or older.
(2) The child has been adjudicated a child in need of assistance pursuant to section 232.96.
(3) The child has been removed from the physical custody of the child's parents for at least twelve of the last eighteen months, or for the last twelve consecutive months and any trial period at home has been less than thirty days.
(4) There is clear and convincing evidence that at the present time the child cannot be returned to the custody of the child's parents as provided in section 232.102.
f. The court finds that all of the following have occurred:
(1) The child has been adjudicated a child in need of assistance pursuant to section 232.96.
(2) The court has terminated parental rights pursuant to section 232.117 with respect to another child who is a member of the same family.
(3) There is clear and convincing evidence that the parent continues to lack the ability or willingness to respond to services which would correct the situation.
(4) There is clear and convincing evidence that an additional period of rehabilitation would not correct the situation.
g. The court finds that all of the following have occurred:
(1) The child is three years of age or younger.
(2) The child has been adjudicated a child in need of assistance pursuant to section 232.96.
(3) The child has been removed from the physical custody of the child's parents for at least six months of the last twelve months and any trial period at home has been less than thirty days.
(4) There is clear and convincing evidence that the child cannot be returned to the custody of the child's parents as provided in section 232.102 at the present time.