# IN THE COURT OF APPEALS OF IOWA

No. 15-0732
Filed October 14, 2015

IN THE INTEREST OF B.G. and B.G.,
    Minor Children,

S.G., Mother,
    Appellant.
_____

Appeal from the Iowa District Court for Black Hawk County, David F. Staudt, Judge.


The mother appeals the termination of her parental rights in her two children. **AFFIRMED.**


Christina Shriver of Coonrad Law Firm, Hudson, for appellant.

Thomas J. Miller, Attorney General, Kathryn S. Miller-Todd, Assistant Attorney General, Thomas J. Ferguson, County Attorney, and Kathleen Hahn and Steven Halbach, Assistant County Attorneys, for appellee.

Kelly Smith of Kelly J. Smith, P.C., Waterloo, for father C.S.

Virginia Wilber of Nelson Law Firm, Waterloo, for father M.B.

Melissa Anderson Seeber of Juvenile Public Defender Office, Waterloo, attorney and guardian ad litem for minor children.


Considered by Vaitheswaran, P.J., Potterfield and McDonald, JJ.

**MCDONALD, Judge.**

The mother, Stacia, appeals the order terminating her parental rights in her children, Br.G. and Ba.G. On appeal, Stacia argues the State failed to prove the grounds for termination by clear and convincing evidence. She also argues that the State failed to make reasonable efforts to reunite her with her children and that the juvenile court should have deferred permanency for an additional six months.

We review de novo proceedings terminating parental rights. *See In re A.M.*, 843 N.W.2d 100, 110 (Iowa 2014). While we give weight to the findings of the juvenile court, our statutory obligation to review termination proceedings de novo means our review is not a rubber stamp of what has come before. We will uphold an order terminating parental rights only if there is clear and convincing evidence of grounds for termination. *See In re C.B.*, 611 N.W.2d 489, 492 (Iowa 2000). Evidence is "clear and convincing" when there are no serious or substantial doubts as to the correctness of the conclusions of law drawn from the evidence. *See id.*

In August 2012, Br.G. (then seven months old) was removed from Stacia's care due to the risk of harm to the child caused by Stacia's methamphetamine use. Stacia stipulated the child was in need of assistance. Ba.G. was born in July 2013. In August 2013, the State recommended and petitioned to terminate Stacia's parental rights to Br.G. after a psychiatrist opined Stacia would not be able to address her substance abuse and mental health. The juvenile court concluded termination of Stacia's rights would not be appropriate and ordered

home placement because Stacia had, in fact, shown progress in addressing her substance-abuse problem and her mental health. Br.G. was returned to the mother's care with Ba.G. In February 2014, the Iowa Department of Human Services ("IDHS") recommended the children remain in Stacia's care because she had taken advantage of the services provided to her, had made substantial progress in many areas, and had maintained her sobriety.

Things began to unravel in the spring of 2014. IDHS requested the children be removed from Stacia's care after a founded charge of denial of critical care was made. The charge arose out of an altercation between Stacia and her sister in the presence of Ba.G. IDHS also suspected Stacia had relapsed and was using illegal substances. Stacia demonstrated slow and slurred speech and the inability to express herself logically. Stacia refused to provide a urine sample for drug testing, but she did eventually provide a hair stat. The hair stat was negative, but IDHS suspected Stacia was manipulating the hair stat by dyeing her hair. The juvenile court denied the request for removal. In June 2014, IDHS again requested the removal of the children based on its suspicion Stacia had relapsed. The juvenile court again denied the request. In July 2014, IDHS again requested the children be removed from Stacia's care after several reported incidents of Stacia engaging in erratic behavior. It was reported Stacia was found outside in her underwear yelling at the father of Br.G. Stacia reportedly left her children unattended in the car in a grocery store parking lot for a long period of time and then drove off erratically. She demonstrated other bizarre behaviors

consistent with substance abuse. The juvenile court granted the request for removal.

Stacia's behaviors continued to deteriorate after removal. She became homeless, residing with different men. Her visitation with the children was inconsistent. When she did exercise visitation, she displayed inappropriate behaviors, including lashing out angrily and raising inappropriate topics. In December 2014, Stacia's visitation rights with the children were suspended after Stacia threatened a service provider and made irrational statements. The court informed Stacia visitation could be reinstated after Stacia reinitiated therapy and substance-abuse treatment. It should be noted that immediately prior to the suspension of her visitation rights, Stacia had missed four weeks' visitation in a row.

By the time of the termination hearing, it was clear, as IDHS suspected, Stacia had relapsed. She began associating again with known drug users. She had been observed selling Vicodin and requesting prescription drugs from others. She was arrested on September 7 and charged with possession of methamphetamine, second offense; operating while intoxicated, second offense; possession of drug paraphernalia; and interference with official acts. She was arrested again in October 2014 for public intoxication and spent two weeks in jail. At the time of her release from jail, Stacia admitted to her service providers that she had been using methamphetamine throughout the case, including during her pregnancies. She was arrested again in December 2014 for possession of

contraband, possession of a controlled substance, possession of prescription drugs, and disorderly conduct. She remained in jail until January 26, 2015.

Stacia's mental health also deteriorated over this time period. She accused others of conspiring with the government to plot against her. On one occasion, she disassembled a television she believed contained a tracking device. She accused her service providers of stealing $1000 per day from her to pay for foster care. She experienced delusions regarding whether the children attended Thanksgiving dinner. She threatened to kill her grandmother and became aggressive with her FSRP worker. At a family team meeting in November, Stacia refused to participate, wrote "I am taking the Fifth" on the attendance sheet, and left the meeting. These incidents are in accord with a 2013 report, which concluded, "Stacia displays serious impaired capacities to think logically and coherently and to perceive people and events realistically. Consideration should be given to the distinct possibility that she has a schizophrenia-spectrum disorder."

The case ultimately proceeded to a termination hearing. The CASA termination report summarized Stacia's issues:

> A brief history of Stacia's involvement in the removal and subsequent attempts to regain custody of her daughters reveal many issues. She struggles to maintain sobriety, avoid entanglements with law enforcement, maintain a stable living situation, make effective use of her visitation time, engage in mental health and drug treatment, refrain from acting out in front of her daughters, and achieve sustained periods of rational behavior and thought with providers, boyfriends, and family members.

The court terminated Stacia's parental rights in both children in April 2015 pursuant to Iowa Code section 232.116(1)(*l*) (2015) (providing for termination

where the parent's chronic substance abuse presents danger to the child and the child cannot be returned within a reasonable time).

We first address the sufficiency of the evidence supporting the termination of Stacia's parental rights. On de novo review, we conclude there is clear and convincing evidence supporting the statutory ground authorizing termination of the mother's parental rights; there is clear and convincing evidence termination of the mother's rights is in the best interest of the children; and there is no countervailing consideration precluding termination. *See* Iowa Code § 232.116(1)-(3); *see In re P.L.*, 778 N.W.2d 33, 40-41 (Iowa 2010) (setting forth the three-part analysis). Although past conduct is not determinative of future conduct, it is probative. *See In re K.F.*, No. 14–0892, 2014 WL 4635463, at *4 (Iowa Ct. App. Sep. 17, 2014) ("What's past is prologue."); *see also In re A.B.*, 815 N.W.2d 764, 778 (Iowa 2012) (noting a parent's past conduct is instructive in determining future behavior); *In re C.K.*, 558 N.W.2d 170, 172 (Iowa 1997) (concluding a parent's past behavior is indicative of "the quality of care the parent is capable of providing in the future"). Here, the mother has demonstrated a history of substance abuse and criminal behavior since 2003—long before the commencement of this case—continuing through the time of the termination hearing. Given her past conduct and most recent conduct leading up to the time of the termination hearing, it is clear the mother's substance abuse and criminal behavior presents a danger to her children, which precludes their return to her care. *See, e.g.*, *In re C.M.*, No. 14–1140, 2015 WL 408187, at *4–5 (Iowa Ct. App. Jan. 28, 2015) (affirming termination of parental rights where the parents

sought more time but evidence established they were unlikely to resolve their substance abuse problems); *In re H.L.*, No. 14–0708, 2014 WL 3513262, at \*4 (Iowa Ct. App. Jul. 16, 2014) (affirming termination of parental rights where the father had history of substance abuse and criminal conduct); *In re J.L.*, No. 02–1968, 2003 WL 21544226, at \*3 (Iowa Ct. App. Jul. 10, 2003) (concluding that relapse of parent despite offer of services supported termination of parental rights); *In re N.F.*, 579 N.W.2d 338, 341 (Iowa Ct. App. 1998) ("[I]n considering the impact of a drug addiction, we must consider the treatment history of the parent to gauge the likelihood that the parent will be in a position to parent the child in the foreseeable future."); *In re A.J.*, 553 N.W.2d 909, 915 (Iowa Ct. App. 1996) (concluding that lengthy history of repeated relapses and guarded prognosis for sobriety supported termination of parental rights), *overruled on other grounds by In re P.L.*, 778 N.W.2d 33, 40 (Iowa 2010).

For the same reasons, we reject the mother's contention the juvenile court should have deferred permanency for another six months to offer her more time. To defer permanency for six months, the juvenile court must "enumerate the specific factors, conditions, or expected behavioral changes which comprise the basis for the determination that the need for removal of the child[ren] from the child[ren]'s home will no longer exist at the end of the additional six-month period." Iowa Code § 232.104(2)(b). As set forth above, there is no reason to believe the mother will remedy the conditions giving rise to removal. Stacia has engaged in drug use and criminal behavior for more than a decade. She has

demonstrated the inability to maintain her sobriety and refrain from criminal conduct for any meaningful period of time outside a custodial setting.

We also reject the mother's argument the State failed to make reasonable efforts to reunite her with her children. Specifically, Stacia contends the suspension of her visitation until she reinitiated substance abuse and mental health services was improper. The core of the reasonable efforts mandate is the child welfare agency must make reasonable efforts to "facilitate reunification while protecting the child from the harm responsible for the removal." *In re M.B.*, 553 N.W.2d 343, 345 (Iowa Ct. App. 1996). The nature of the reasonable efforts mandate is determined by the circumstances of each case. *See In re C.B.*, 611 N.W.2d 489, 493 (Iowa 2000). Since 2012, Stacia has been provided with numerous services, including: foster-care placement; relative-care placement; mental-health services; Family, Safety, Risk and Permanency services; visitation; drug testing; transportation; inpatient substance-abuse treatment; support-group services; after care services; and parent skill services. She failed to avail herself of these services to make permanent change. Only after the mother had relapsed and engaged in threatening and erratic behavior, placing both the service provider and the children at risk, did IDHS request visitation be conditioned on the mother obtaining services to address these issues. Under the circumstances of this case, we cannot conclude the conditional visitation was a denial of reasonable efforts. *See In re T.H.*, No. 03-1704, 2003 WL 23008820, at *2 (Iowa Ct. App. Dec. 24, 2003) (holding conditional visitation was not a denial of reasonable efforts); *In re M.B.*, 595 N.W.2d 815, 818 (Iowa Ct. App. 1999)

(concluding threatening behavior was tantamount to rejection of services offered); *In re M.B.*, 553 N.W.2d at 345 (approving limitations on visitation when in the best interests of the children). This is particularly true where, as here, the mother was inconsistent with her visitation prior to its suspension, where the suspension was late in the case, and where the mother was unable to exercise visitation for a significant period of time after suspension due to her incarceration.

We have considered the parties' respective arguments, whether or not set forth explicitly herein, and we affirm the order terminating the mother's parental rights in both children.

**AFFIRMED.**