## IN THE COURT OF APPEALS OF IOWA

No. 21-0467
Filed June 30, 2021

**IN THE INTEREST OF E.H. and K.H.,**
**Minor Children,**

**S.D., Mother,**
     Appellant,

**K.H., Father,**
     Appellant.

_____

Appeal from the Iowa District Court for Winneshiek County, Linnea M.N.

Nicol, District Associate Judge.

A mother and father separately appeal the termination of their respective

parental rights. **AFFIRMED ON BOTH APPEALS.**

David G. Baumgartner, Strawberry Point, for appellant mother.

Robert W. Winterton of Elwood, O'Donohoe, Braun & White, LLP, New

Hampton, for appellant father.

Thomas J. Miller, Attorney General, and Meredith L. Lamberti, Assistant

Attorney General, for appellee State.

Kristin R. Schiller Herman, Calmar, attorney and guardian ad litem for minor

children.

Considered by Doyle, P.J., and Mullins and May,  JJ.

**MAY, Judge.**

A mother and father separately appeal from the termination of their respective rights to their children, E.H. and K.H., born in 2018 and 2019 respectively. Both parents argue (1) the State failed to establish statutory grounds authorizing termination, (2) termination is not in the children's best interests, and (3) we should grant additional time for the parents to work toward reunification. The father additionally argues (1) the juvenile court should have exercised an exception to termination under Iowa Code section 232.116(3)(c) (2020) and (2) the children should have been placed with their paternal grandparents. We affirm.

We review termination proceedings de novo. *In re Z.P.*, 948 N.W.2d 518, 522 (Iowa 2020). "We will uphold an order terminating parental rights where there is clear and convincing evidence of the statutory grounds for termination. Evidence is clear and convincing when there is no serious or substantial doubt as to the correctness of the conclusions of law drawn from the evidence." *In re T.S.*, 868 N.W.2d 425, 431 (Iowa Ct. App. 2015) (citation omitted).

We generally use a three-step analysis to review the termination of a parent's rights. *In re A.S.*, 906 N.W.2d 467, 472 (Iowa 2018). We must determine: (1) whether grounds for termination have been established, (2) whether termination is in the children's best interests, and (3) whether we should exercise any of the permissive exceptions to termination. *Id.* at 472–73. We also address any additional claims raised by the parents. *In re K.M.*, No. 19-1637, 2020 WL 110408, at *1 (Iowa Ct. App. Jan. 9, 2020).

Both parents claim the State failed to satisfy the statutory grounds authorizing termination. The court found grounds for termination under Iowa Code section 232.116(1)(h). It authorizes the termination of parental rights when:

> (1) The child is three years of age or younger.
> (2) The child has been adjudicated a child in need of assistance pursuant to section 232.96.
> (3) The child has been removed from the physical custody of the child's parents for at least six months of the last twelve months, or for the last six consecutive months and any trial period at home has been less than thirty days.
> (4) There is clear and convincing evidence that the child cannot be returned to the custody of the child's parents as provided in section 232.102 at the present time.

The parents only challenge the fourth element. It is satisfied when the State establishes the child cannot be safely returned to the parent at the time of the termination hearing. *In re T.W.*, No. 20-0145, 2020 WL 1881115, at *2–3 (Iowa Ct. App. Apr. 15, 2020).

As the State points out, both parents have struggled with substance abuse, their mental health, and domestic abuse. The mother has repeatedly tested positive for methamphetamine during the life of this case, and as recently as November 2020.[1] At the termination hearing, she testified that she had "approximately a little bit more than thirty days of sobriety." The mother has a long history of relapse, having lost custody to her two older children due to substance abuse.

The father has also tested positive for methamphetamine, and as recently as October 2020. And he has routinely refused Iowa Department of Human

---

[1] The termination hearing took place over two days in December 2020 and January 2021.

Services's (DHS) drug tests throughout this case. We presume missed tests would have been positive for illegal substances. *See In re I.J.*, No. 20-0036, 2020 WL 1550702, at *2 (Iowa Ct. App. Apr. 1, 2020) ("We presume these missed drug tests would have resulted in positive tests."); *In re D.G.*, No. 20-0587, 2020 WL 4499773, at *4 (Iowa Ct. App. Aug. 5, 2020); *In re L.B.*, No. 17-1439, 2017 WL 6027747, at *2 (Iowa Ct. App. Nov. 22, 2017); *In re C.W.*, No. 14-1501, 2014 WL 5865351, at *2 (Iowa Ct. App. Nov. 13, 2014) ("She has missed several drug screens, which are thus presumed 'dirty,' i.e., they would have been positive for illegal substances."). The father has also been the subject of multiple protective orders for his actions toward the mother as well as threats against the foster parent, daycare provider, and others.

We reiterate once again, "Methamphetamine is a scourge." *In re J.P.*, No. 19-1633, 2020 WL 110425, at *2 (Iowa Ct. App. Jan. 9, 2020); *In re K.L.*, No. 17-0346, 2017 WL 2465817, at *1 (Iowa Ct. App. June 7, 2017). "A parent's methamphetamine use, in itself, creates a dangerous environment for children." *J.P.*, 2020 WL 110425, at *2. We cannot turn a blind eye to the parents' history of use. And we fear their continued methamphetamine use is likely in the future. *Cf. In re J.B.*, No. 18-0696, 2018 WL 4361058, at *3 (Iowa Ct. App. Sept. 12, 2018) (finding a child could not be returned to a parent when the parent had only been sober for three months). The parents' drug use prevented reunification. *See In re L.B.*, No. 18-1017, 2018 WL 3650370, at *1 (Iowa Ct. App. Aug. 1, 2018) (collecting cases affirming termination of a parent's parental rights when the parent has a history of substance abuse).

Couched within the father's argument for additional time to work toward reunification, the father raises a reasonable-efforts challenge.[2]  In particular, the father points to DHS's failure to provide him visitation following the entry of a no contact order and notice of drug testing.  However, we consider any reasonable-efforts challenge when determining whether the State established the statutory grounds authorizing termination.  We recognize "[t]he State must show reasonable efforts as part of its ultimate proof the child[ren] cannot be safely returned to the care of a parent."  *In re C.B.*, 611 N.W.2d 489, 493 (Iowa 2000).  So we interpret the father's argument to allege the statutory grounds are not met because he was not provided the necessary services to enable reunification and the case must continue so he can receive adequate services.

But we expect parents to alert the court of the alleged deficiencies prior to the termination hearing.  *See In re L.M.*, 904 N.W.2d 835, 839–40 (Iowa 2017) ("[P]arents have a responsibility to object when they claim the nature or extent of services is inadequate."); *In re C.H.*, 652 N.W.2d 144, 147 (Iowa 2002) ("If, however, a parent is not satisfied with DHS'[s] response to a request for other services, the parent must come to the court and present this challenge."); *In re O.T.*, No. 18-0837, 2018 WL 3302167, at *2 (Iowa Ct. App. July 5, 2018) ("The failure to request different or additional . . . services in the juvenile court precludes [the parent's] challenge to the services on appeal."); *In re A.A.G.*, 708 N.W.2d 85, 91 (Iowa Ct. App. 2005) (stating the parent has an obligation to demand other,

---

[2] To the extent the mother raises a reasonable efforts challenge, her argument is not sufficiently developed for our review.  *See K.M.*, 2020 WL 110408, at *3 n.6; *In re O.B.*, No. 18-1971, 2019 WL 1294456, at *2 (Iowa Ct. App. Mar. 20, 2019).

different, or additional services prior to the termination hearing or the issue is considered waived for appeal). This requirement allows the court to take corrective action early on so that the case does not languish on and permanency can be reached within a reasonable time for the children. Doing so obviates the need for additional time to address service deficiencies only identified at the termination hearing when a family is on the precipice of termination. So we will only determine whether previously identified alleged service deficiencies remain and require additional time to address.

Here, the father brought a reasonable-efforts challenge before the juvenile court only once and alleged DHS failed to provide him with drug testing. Now, the father also claims DHS failed to make reasonable efforts when it modified his visitation following entry of a no contact order between him and the foster parent and children's daycare provider after the father made threatening statements. Because he only previously alerted the court to the alleged lack of drug testing, we only consider whether the father was denied drug testing and should be given additional time to receive that service.

At the termination hearing, the DHS worker and family support specialist testified on their attempts to notify the father of drug testing. But, as the juvenile court noted in October, "[t]he father did not participate in those drug tests because he was not at the residence he reported he was living at the time the drug testers appeared" and "[w]hen the drug testers would try to reach the father, he would not answer his cell phone, nor did he provide them with a valid address." Upon our de novo review, we find the father's "own behavior prevented him from partaking in services to aid reuniting him with his family." *In re M.B.*, 595 N.W.2d 815, 818

(Iowa Ct. App. 1999). So we conclude DHS already provided the father with drug testing opportunities and the State satisfied the reasonable-efforts mandate.

Like the juvenile court, we find E.H. and K.H. could not have been safely returned to either parent's care at the time of the termination hearing. This step in our analysis is satisfied. *See Z.P.*, 948 N.W.2d at 524 (affirming termination under section 232.116(1)(h) where the parent "was not prepared to assume a parenting role at the time of trial").

Our next step centers on the children's best interests. *See* Iowa Code § 232.116(2). We "give primary consideration to the child's safety, to the best placement for furthering the long-term nurturing and growth of the child, and to the physical, mental, and emotional condition and needs of the child." *In re P.L.*, 778 N.W.2d 33, 40 (Iowa 2010) (quoting Iowa Code § 232.116(2)). "It is well-settled law that we cannot deprive a child of permanency after the State has proved a ground for termination under section 232.116(1) by hoping someday a parent will learn to be a parent and be able to provide a stable home for the child." *Id.* at 41.

Like the juvenile court, we conclude termination is in the children's best interests. We do not question the parents' affection for the children. Even so, we cannot ignore their history of domestic abuse, unaddressed mental-health issues, and methamphetamine abuse. Given their history, we are not confident either parent will be able to adequately meet the children's needs in the future. *See In re C.W.*, 554 N.W.2d 279, 283 (Iowa Ct. App. 1996). Meanwhile, E.H. and K.H.'s foster parent meets their mental, physical, and emotional needs. The children are bonded with the foster parent, and she is interested in adopting them. *See* Iowa Code § 232.116(2)(b). The second step in our analysis is complete.

Next, we consider whether to apply a section 232.116(3) exception to termination. Section 232.116(3) exceptions are permissive, not mandatory. *In re A.R.*, 932 N.W.2d 588, 591 (Iowa Ct. App. 2019). And the burden of establishing a section 232.116(3) exception rests with the parent. *See A.S.*, 906 N.W.2d at 476.

The father refers to section 232.116(3)(c).[3] It authorizes the court to forgo termination if "[t]here is clear and convincing evidence that the termination would be detrimental to the child at the time due to the closeness of the parent-child relationship." Iowa Code § 232.116(3)(c). We decline to apply section 232.116(3)(c) here. By the time the termination hearing commenced in December 2020, E.H. was two years old and K.H. was about eighteen months old. The children were removed from their parents' care in October 2019. K.H. had already spent all but four months out of the father's care. E.H. has now spent approximately half of his life out of the father's care. Any lingering bond between them does not outweigh E.H. and K.H.'s pressing, imperative need for a safe and stable home.[4]

Next, we address both parents' requests for additional time to work toward reunification. The court may defer termination for a period of six months if it is able to "enumerate the specific factors, conditions, or expected behavioral changes which comprise the basis for the determination that the need for removal of the

---

[3] We did not find anything in the mother's petition on appeal asking us to apply a section 232.116(3) exception to termination.

[4] To the extent the father raises section 232.116(3)(a) as an exception to termination, his argument is not sufficiently developed for our review. *See K.M.*, 2020 WL 110408, at *3 n.6; *O.B.*, 2019 WL 1294456, at *2.

child from the child's home will no longer exist at the end of the additional six month period." *Id.* § 232.104(2)(b). While the parents make general statements about maintaining their sobriety, they do not provide any explanation as to how they would make these changes. We will not force E.H. and K.H. to wait in limbo any longer. *See In re D.W.*, 791 N.W.2d 703, 707 (Iowa 2010) ("We do not 'gamble with the children's future' by asking them to continuously wait for a stable biological parent, particularly at such tender ages." (citation omitted)). Given the parents' history of substance abuse and relapse, we do not believe section 232.104(2)(b) required a grant of additional time.

Lastly, the father contends the children should have been placed with their paternal grandparents. The father argues (1) the court erred in not establishing a guardianship in the paternal grandparents instead of terminating his parental rights and (2) even if the court correctly terminated his parental rights, placement of the children should have been transferred from the foster parent to the parental grandparents. We consider each in turn.

We first address the court's refusal to create a guardianship in the paternal grandparents. Section 232.104(2)(d) sets forth several permanency options for the children's placement, including transferring "guardianship and custody of the child[ren] to a suitable person" or transferring "custody of the child[ren] to a suitable person for the purpose of long-term care." *See* Iowa Code § 232.104(2)(d)(1), (3). However, the placements enumerated in paragraph (d) can only be ordered if there is convincing evidence that termination of the parent-child relationship is not in the children's best interests and that the children could not be returned to their home even though "[s]ervices were offered to the child[ren]'s family to correct the

situation which led to the child[ren]'s removal." *Id.* § 232.104(3)(a)–(c); *but see In re B.T.*, 894 N.W.2d 29, 33 (Iowa Ct. App. 2017) ("Generally, permanency orders are not preferred over the termination of parental rights."). Here we find the children's best interests are served by termination of the father's parental rights. *See In re K.N.*, 625 N.W.2d 731, 733 (Iowa 2001) ("As in all juvenile proceedings, our fundamental concern is the best interests of the child."). For these young children, a guardianship is not an acceptable substitute. *See A.S.*, 906 N.W.2d at 477 ("[A] guardianship is not a legally preferable alternative to termination." (citation omitted)).

Finally, we note the father's argument that the juvenile court should have transferred placement from the foster parent to the paternal grandparents. But the father does not have standing to raise this issue. *See In re K.A.*, 516 N.W.2d 35, 38 (Iowa Ct. App. 1994) (noting that when parental rights are terminated, the parent is "divest[ed] of all privileges, duties, and powers with respect to the children"). So we decline to address it.

The court was correct in terminating the mother's and the father's respective parental rights.

**AFFIRMED ON BOTH APPEALS.**