# IN THE COURT OF APPEALS OF IOWA

No. 23-1317
Filed December 6, 2023

**IN THE INTEREST OF J.G., D.G., and A.G.,**
**Minor Children,**

**B.G., Mother,**
 Appellant.

_____

Appeal from the Iowa District Court for Cass County, Justin R. Wyatt, District Associate Judge.

A mother appeals the termination of her parental rights. **AFFIRMED.**

Sara E. Benson of Meldrum & Benson Law, P.C., Council Bluffs, for appellant mother.

Brenna Bird, Attorney General, and Tamara Knight, Assistant Attorney General, for appellee State.

Karen L. Mailander, Anita, attorney and guardian ad litem for minor children.

Considered by Bower, C.J., and Schumacher and Buller, JJ.

**BOWER, Chief Judge.**

A mother appeals the termination of her parental rights to three children, J.G., born in 2013; A.G., born in 2016; and D.G., born in 2018.[1] She contends the State failed to prove the grounds for termination cited by the juvenile court, the Iowa Department of Health and Human Services (department) failed to make reasonable efforts toward reunification, and termination is not in the best interests of the children. Upon our review, we affirm.

## I.   *Background Facts and Proceedings*

This family came to the department's attention in March 2022, upon concerns the mother "was using methamphetamine in the family home." After declining several requests for drug screens, the mother eventually agreed to submit to a test, which was positive for methamphetamine. The mother maintained it was a "false positive" and absconded with the children in her vehicle. The children were removed from the mother's custody, placed in relative care, and adjudicated in need of assistance.

The court entered a dispositional order in June, noting the mother had not yet completed substance-abuse or mental-health evaluations. The mother had not had in-person visitation with the children because "she often works evening hours" and she had "not followed through with setting up visits." She had, however, engaged in several supervised phone calls with the children. The mother denied being a relationship with a known substance user, stating they were "just longtime friends."

---

[1] The parental rights of D.G.'s father were also terminated; he does not appeal. The parental rights of the fathers of J.G. and A.G. were not terminated.

Through 2022, the mother "made minimal progress." She denied drug use but continued to miss drug screens, did not obtain substance-abuse or mental-health evaluations, failed to engage in family-centered services, "struggled with confirming her visits" with the children, engaged in "inappropriate" conversations with the children during visits she attended, and failed to "call[] regularly to speak with the children during her scheduled time." She did not have a home, but she occasionally spent nights with her grandmother. Because the children were in separate placements, they did not see each other when the mother cancelled her visits. The court ordered the placements to make efforts to arrange for sibling contact "independent of, and apart from, the mother's scheduled visits."

In December 2022, the mother completed a substance-abuse evaluation, which recommended inpatient treatment. The mother stated she was "looking at inpatient treatment programs that allow children to stay with their mothers." However, the mother continued to fail to appear for drug screens, maintaining "she will not test because the only people who need to know she's clean are her kids."

The court entered a permanency order in April 2023. The mother acknowledged she had been without a home, but she stated she recently obtained housing in Council Bluffs. The mother did not disclose her employment, explaining "she will only hold 'under the table' jobs because she does not want to pay child support." Her visits with the children, although sporadic, were eventually suspended due to her having conversations with the children about suicide and "telling the children goodbye," which "caused the children trauma." The mother's family also expressed concern about her mental health and suicidal ideations. Meanwhile, despite "numerous opportunities to engage in outpatient and inpatient

treatment," the mother "followed through with neither." The State initiated termination-of-parental-rights proceedings.

The termination hearing took place in July. At the outset of the hearing, the mother requested a "short" continuance for additional time to reunify with the children, which was resisted by the State and the guardian ad litem. The court denied the mother's request, and the hearing took place as scheduled.

The caseworker testified about the services provided to the mother and the mother's lack of participation and progress. Concerns remained about the mother's "drug use," "unstable housing," mental health, lack of consistent contact with the children, and inappropriate parenting. According to the caseworker, the mother had "ample opportunity over the past year-plus to engage in services, treatment, and the recommendations that were set forth by the court, and she has not followed through with them." The caseworker further opined any "additional services" provided to the mother would not facilitate reunification with the children. The department and guardian ad litem opined termination of the mother's parental rights would be in the best interests of the children.

The court thereafter entered an order terminating the mother's parental rights pursuant to Iowa Code section 232.116(1)(e) and (f) (2023). The court noted the mother "consistently refused to comply with court-ordered services," "appeared to be in complete denial of her situation," and "had not taken the necessary steps to confront her substance abuse and mental health issues." The mother appeals.

## II.    *Standard of Review*

Appellate review of termination-of-parental-rights proceedings is de novo. *In re A.B.*, 957 N.W.2d 280, 293 (Iowa 2021). Our paramount concern in

termination proceedings is the best interests of the child. *In re L.T.*, 924 N.W.2d 521, 529 (Iowa 2019). We give weight to, but are not bound by, the juvenile court's fact findings. *In re A.S.*, 906 N.W.2d 467, 472 (Iowa 2018).

### III. Grounds for Termination

The mother's rights were terminated on multiple grounds; we may affirm if any one of the grounds is supported by the record. *See In re A.B.*, 815 N.W.2d 764, 774 (Iowa 2012) ("When the juvenile court terminates parental rights on more than one statutory ground, we may affirm the juvenile court's order on any ground we find supported by the record."). We focus on paragraph (f). Regarding this paragraph, the mother only challenges the fourth element—whether the children could be returned to her custody.[2] *See* Iowa Code § 232.116(1)(f)(4). This element is satisfied when the State establishes the children cannot be safely returned to the parent at the time of the termination hearing. *In re T.W.*, No. 20-0145, 2020 WL 1881115, at *2–3 (Iowa Ct. App. Apr. 15, 2020). The mother claims she "has addressed her substance abuse needs" and "if given a drug screen the day of the termination hearing, the test would be negative." The mother also maintains "[h]er living environment is acceptable" because "[a]t the time of the hearing, [she] and her roommate were moving to a bigger home."

Upon our review, we find the record belies the mother's claims. At the termination hearing, the department voiced concerns about the mother's continued methamphetamine use. In mid-May, less than two months before the hearing, the mother presented to Manning Recovery Center for treatment. She reported "she

---

[2] The mother also raises this claim in a separate issue; we address it here.

uses meth 3 times a week and will take 4 hits at a time"; however, she "does not believe she is a drug addict" and "does not know why she is in treatment." The mother appeared to be "under the influence at the time of the evaluation." She reported being "unsure where she will go after treatment," and she "d[id] not want to go to sober living." The mother was "threatening" and "disrespectful" to staff, and she was unsuccessfully discharged from treatment a few days later. But the mother claimed the information from Manning was "not accurate at all" and she hadn't "used since" she "went into treatment." She also stated other providers were "lying" about her drug use or had "a conflict of interest." She stated she hadn't "been around anyone that has done it since [she] got out of Manning," and she had "been trying to get back into a treatment center, but they are booked back because IV users get to go first." According to the caseworker, the mother had "not done anything" since her discharge to address the active substance abuse she reported upon intake.

The department also voiced concerns about the mother's lack of stable housing. The caseworker testified the mother never provided the department with a permanent address. Throughout the case, she had lived in her car, under a bridge, and with her grandmother in a home in which her father, who was "actively using methamphetamine," also lived. The mother testified she wasn't sure where her father was living but "he's starting to get clean," and "if he has to stay away, he will just so I can have my kids home."

On this issue, the juvenile court found:

> There exists clear and convincing evidence [the mother] has not alleviated the concerns which resulted in all three children being removed from her care and adjudicated as children in need of

> assistance. [The mother] has failed to stay in communication with service providers, submit to drug screens, maintain consistent visits with the children, complete inpatient or outpatient substance abuse treatment, or obtain a mental health evaluation. She is in complete denial of the issues that originally lead to the children being adjudicated as children in need of assistance. She has been nomadic, and often homeless, during the pendency of the underlying [child-in-need-of-assistance] cases. [The mother] claims she currently lives in an apartment in Omaha, Nebraska, and will be moving to a house in the near future. For the reasons outlined above and detailed throughout this order, the children cannot be returned to [the mother]'s custody now or in the foreseeable future.

Based on these and the other facts detailed above, we concur with the court's assessment these children could not be returned to the mother's custody at the time of the termination hearing. Iowa Code section 232.116(1)(f) was satisfied.

## IV.    *Best Interests*

Termination also must serve the children's best interests. *See* Iowa Code § 232.116(2); *In re H.S.*, 805 N.W.2d 737, 748 (Iowa 2011) (observing the defining elements of the best-interests analysis are the children's safety and need for a permanent home). The juvenile court found, "The children deserve permanency now and cannot wait for their parents to learn and consistently demonstrate effective parenting skills which would provide them with a safe, structured home." The court observed the mother "failed to consistently and successfully participate in court-ordered services for reunification" and her "history of noncompliance [is] an indicator of the likelihood that [she] will continue to not participate in court-ordered services geared towards reunification." The guardian ad litem noted the mother "is so unstable in her personal life that I believe she represents a danger to the children if she's not supervised with them." The guardian ad litem opined "these children need and deserve a safe, stable, loving home," adding "the court

has the power to make an order that could accomplish that, and that's what I would hope that the court will do." Upon our review, we conclude termination is in the children's best interests, and no exceptions from section 232.116(3) apply to preclude termination. *See A.S.*, 906 N.W.2d at 472–73.

## V. *Reasonable Efforts*

The mother also contends the department failed to make reasonable efforts toward reunification. Our courts have recognized that the State must show reasonable efforts toward reunification "as a part of its ultimate proof" grounds for termination exist. *See, e.g., In re C.B.*, 611 N.W.2d 489, 493 (Iowa 2000). Specifically, the mother claims the department "set up drug screens in towns/areas where she was residing and . . . did not help provide transportation assistance."

To the contrary, the record shows that from the time of the initial department involvement, the mother evaded drug screens. The caseworker testified she provided the mother "with a list of places to drug screen . . . and a variety of locations and time to accommodate her location between Red Oak and Council Bluffs," and she instructed the mother she was "allowed to provide a sample at either a location in Red Oak or in Council Bluffs related to where she was on that day." Yet the mother testified she didn't know she was allowed to test at multiple locations. On this issue, we concur with the juvenile court's finding the mother's testimony was not credible. The caseworker also testified "family centered services . . . offer[ed the mother] gas cards to get to visits and drug screens." The mother acknowledged she "received four gas cards" and the department offered to provide more.

The mother also claims "the professionals associated with this case failed to maintain contact with her." To the contrary, the court observed the mother "had been noncompliant with court-ordered services and noncommunicative with caseworkers," including "making physical threats against caseworkers and the court." *See In re M.B.*, 595 N.W.2d 815, 818 (Iowa Ct. App. 1999) (observing a parent's threatening and assaultive behavior toward social workers is "tantamount to a rejection of [reunification] services provided to [her]"). The record is replete with examples of caseworkers offering to help the mother but the mother "refus[ing] the assistance, stating that she does not need help" or maintaining "she knows how to [do it] on her own." The court further noted the mother "clearly rejected services preventing said services from correcting the conditions that resulted in the children being adjudicated as children in need of assistance." Here, the mother's "own behavior prevented [her] from partaking in services to aid reuniting [her] with [her] family." *See id.*

We affirm the termination of the mother's parental rights.

**AFFIRMED.**